Walter C. MEREDITH and Marjorie L. Meredith, husband and wife, Plaintiffs,

v.

UNITED AIR LINES, a corporation, the United States of America, and Lockheed Aircraft Corporation, Defendants.

UNITED STATES of America, Third-Party Plaintiff,

v.

LOCKHEED AIRCRAFT CORPORATION, Third-Party Defendant.

Civ. A. No. 64-26-IH.

United States District Court
S. D. California,
Central Division.

Aug. 26, 1966.

Clyde C. Downing, George R. Maury, Los Angeles, Cal., for plaintiffs.

O'Melveny & Myers, Los Angeles, Cal., for defendant United Air Lines.

Larry L. Dier, Asst. U. S. Atty., Manuel L. Real, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Division, Los Angeles, Cal., for defendant United States.

Welsh, Cummins & White, Los Angeles, Cal., for third-party defendant Lockheed.

## MEMORANDUM OPINION

IRVING HILL, District Judge.

This case enables the Court to use the 1966 amendment of Federal Civil Rule 15(c) for the beneficial purposes for which the amendment was intended.

The instant case is a personal injury action based on negligence. On January 22, 1963, Plaintiff, Mrs. Meredith, was a paying passenger on a United Air Lines flight from Seattle to Los Angeles. She is a resident of Washington. Near the end of the flight, while the plane was over the vicinity of Bakersfield, California, she was standing in the restroom when she alleges that she was thrown to the floor by an abrupt and sharp movement of the aircraft, with resultant serious injury and permanent disability.[1]

---

1. Mrs. Meredith's husband is also a party plaintiff, suing for medical bills and loss of the services of his wife.

Plaintiff's husband employed California counsel shortly after the accident. Counsel apparently engaged in quite a lengthy series of settlement negotiations with the insurers for United Air Lines. At some time in those negotiations, Plaintiff's counsel learned that there had been a near-collision between the United plane and a military-type jet fighter plane. Mrs. Meredith and her husband were also told of the near-collision by one of Mrs. Meredith's fellow passengers who was an eye witness. He stated that the abrupt veering off of the passenger plane had been caused by a military-type plane bearing U. S. Government insignia, coming right at it. Mr. and Mrs. Meredith informed counsel of this information in September, 1963. It is not clear which of these two disclosures of the near-collision came to counsel's attention first; they probably occurred at about the same time.[2] In any event that was all the information counsel had when the complaint was prepared and they made the natural assumption that the unidentified military-type plane was government-owned and government-operated.

The instant complaint was filed on January 9, 1964. It is in two counts. Count 1 names United Air Lines alone and is based on diversity. Count 2 names both United Air Lines and the United States, charging the concurrent negligence of both. It alleges that a government plane of "description unknown" was a contributing cause of the injury. The United States is sued under the Federal Tort Claims Act.

Thus far I have discussed the facts which were known to Plaintiff and her counsel up to the filing of the complaint. Important events, unknown to them, had occurred in the meantime. Very shortly after the accident, the Civil Aeronautics Board conducted an investigation of the near-collision. Therein the Government took the position that it had no jet aircraft of a military-type operating anywhere near the scene of the near-collision. The Government also contended therein that if a military-type airplane was involved, it must have been one of two military aircraft being operated in the general area by Lockheed Aircraft Corporation, a supplier of military aircraft to the Government. It appeared that Lockheed, on the date in question, was conducting a pre-delivery test of a new military-type jet aircraft manufactured for the Government. The test also involved the use of another military-type jet plane as a target. Both were being flown by Lockheed's pilots. The Civil Aeronautics Board apprised Lockheed of these facts and made Lockheed a party to the investigation. Statements were taken therein from Lockheed's pilots and other of its employees. Generally Lockheed denied that the tests were conducted in the vicinity of Bakersfield, but one of its pilots stated to the Civil Aeronautics Board that he was "in the vicinity of Bakersfield" after having been released from the tests. The tests were being directed from Palmdale which is about 75 air miles from Bakersfield.

Unfortunately, neither Plaintiff nor her attorney was made aware of the facts which the Civil Aeronautics Board investigation developed.[3]

After extensions of time to plead, the Government filed an answer on June 26,

2. As will be discussed in Footnote 3, infra, Plaintiff's attorney had earlier received hearsay information about there having been a Civil Aeronautics Board investigation of the incident. But that hearsay information was extremely indefinite and did not put him on notice that a near-collision with a military-type airplane had been a cause of the accident.

3. Plaintiff's attorney, Mr. Downing, in an affidavit filed September 2, 1964, states that he was informed "soon after the accident" of the Civil Aeronautics Board investigation and that "after four weeks' investigation, [the Civil Aeronautics Board] issued a statement that [it] had not been able to determine the presence or existence of any military airplanes in or about the area of the accident at the time of the accident." Under all of the facts, I believe that the attorney had no duty to follow the matter further.

1964, which, for the first time, advised Plaintiff and her attorney of the Government's position that it was not operating the military-type aircraft. At the same time, the Government noticed a motion to bring Lockheed into the case as a Third-Party Defendant. The Motion was granted on July 13, 1964. On July 21, 1964, the Government filed a Third-Party Complaint against Lockheed. In the Third-Party Complaint, after describing both of the planes which were being operated by Lockheed in the general area as aforesaid, the Government asserted that the unknown military-type plane referred to in Plaintiff's Complaint was one of those two. The Third-Party Complaint sought indemnification from Lockheed in the event the Government was held liable.

After thus learning of Lockheed's possible involvement, Plaintiff's attorney acted promptly. On September 2, 1964, he moved to sue Lockheed under Civil Rule 14(a) and filed a proposed Amended Complaint. After some lapse of time, that Motion was heard and granted, and on November 20, 1964, an Amended Complaint was filed naming Lockheed as an additional Defendant in Count 2.

Since the first effort to bring Lockheed into the case as a party defendant occurred more than one year after the accident, and since the California statute of limitations for negligence is one year (Code of Civil Procedure § 340(3)), Lockheed has moved to dismiss the Amended Complaint as to it. All parties agreed in oral argument that the California one-year statute of limitations applies.

Plaintiff resists the Motion to Dismiss on two alternative grounds. First, she asks the Court to hold that the statute of limitations has been tolled because of Lockheed's "fraudulent concealment" of its possible implication. Second, she urges that the Amended Complaint should be deemed to relate back to the date on which the original Complaint was filed.

At the hearing on the Motion to Dismiss I gave the parties a substantial additional period of time in which to conduct further discovery. I asked them to file such affidavits as they might wish to file on several factual matters:

(1) What notice Lockheed had had of the pendency of the claim.

(2) Whether Lockheed would be prejudiced by being brought into the action at this time, particularly as to whether Lockheed had made a factual investigation while the facts were fresh in memory.

(3) When Plaintiff first knew or should have known of Lockheed's possible involvement.

Only Plaintiff filed an affidavit as requested.[4]

As will be seen infra, I hold that under Civil Rule 15(c) as amended in 1966, the Amended Complaint should be deemed to relate back to the date of filing the original Complaint. Thus, it is unnecessary to consider whether there has been any "fraudulent" or other concealment which would toll the statute of limitations under California law.

In reaching my conclusion I have considered the following questions:

I. Does this case meet the requirements of present Civil Rule 15(c)?

II. Can Rule 15(c) as amended in 1966 be validly applied to the instant case?

---

4. As the basis for the various findings and fact statements made herein, I have considered, among other documents contained in the file, particularly the following:

   Affidavit of Clyde C. Downing, filed September 2, 1964;

   Affidavit of George R. Maury, filed September 2, 1964;

   Plaintiff's "Supplemental Memorandum in Opposition to Defendant Lockheed's Motion to Dismiss Amended Complaint and Points and Authorities";

   Affidavit of Clyde C. Downing filed December 16, 1965;

   Deposition of Anthony W. LeVier;

   The Civil Aeronautics Board report, a copy of which is attached to Plaintiff's Memorandum filed November 12, 1964.

By way of dictum, it is also my view, as will be discussed infra, that the same result would have been reached under Rule 15(c) before its recent amendment.

## I
## DOES THIS CASE MEET THE REQUIREMENTS OF PRESENT CIVIL RULE 15(c)?

Civil Rule 15(c) as amended by the recent amendments which became effective July 1, 1966, reads as follows:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. *An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.*"

The italicized portion was added by the 1966 amendments.

In determining whether the instant case meets the requirements of Section 15(c) as amended, several inquiries must be made. First, does the claim asserted against Lockheed in the amended pleading arise "out of the conduct, transaction, or occurrence set forth * * * in the original pleading * * *"? Obviously it does.

Second, has Lockheed, the party brought in by the amendment, "received such notice of the institution of the action that [it] will not be prejudiced in maintaining [its] defense on the merits"?

And third, did Lockheed know or should it have known "that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it]"? Both of these requirements also seem amply satisfied by the facts of the instant case.

Lockheed was brought into the Civil Aeronautics Board inquiry and fully investigated the occurrence within a few weeks after it happened. So Lockheed clearly will not be prejudiced in maintaining its defense. Lockheed learned that a passenger on the United plane had been injured not more than a month after the incident and probably within two days afterward. As a result of hearing of the injuries, one of the Lockheed pilots made a written report of the facts to company counsel.[5] This, in my view, is sufficient to have put Lockheed on notice of the instant litigation. Moreover, though Lockheed was specifically afforded the opportunity to file an affidavit clarifying when it in fact gained knowledge of the pendency and institution of Plaintiff's claim, it has filed no such affidavit. I must therefore assume that Lockheed knew of the pendency of the claim before Plaintiff filed the action, and knew of the filing of the action when, or shortly after, it was commenced.

Such knowledge leads to the inescapable conclusion that Lockheed also knew or should have known "that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it]." Lockheed should have known at an early moment that there was a strong possibility of a mistake of identity on the part of Plaintiff and her counsel. It seems obvious that if Plaintiff had known that the Government had no planes operating in the vicinity and that Lockheed had a plane or planes so operating with Government insignia thereon, Plaintiff would have originally named Lockheed at least as a co-defendant with the Government.

5. See deposition of Anthony W. LeVier, one of Lockheed's pilots, taken February 26, 1965, pp. 22–24.

■ One further question remains. Is the instant amendment to the Complaint "[a]n amendment *changing* the party against whom a claim is asserted * * * "? [Italics supplied.] I believe that it is. The instant amendment does add Lockheed as a Defendant while also retaining the Government as a Defendant. Under the circumstances, Plaintiff's counsel could not safely substitute Lockheed for the Government, since Lockheed continues to deny that any of its planes caused the near-collision. Ownership of the aircraft being tested is an unresolved factual and legal question and it is conceivable that Lockheed's pilot, if he caused the near-collision, might be held to be an agent of the Government. The word "changing" must be given a sensible and practical construction. It would be unfair indeed to deny Plaintiff the benefits of Rule 15(c) as amended, merely because her counsel, in the necessary protection of her interests, have not substituted Lockheed in place of the Government.

I conclude that the present case meets all of the requirements of Rule 15(c) as amended.

## II

### CAN RULE 15(c) AS AMENDED IN 1966 VALIDLY BE APPLIED TO THE INSTANT CASE?

In discussing whether Rule 15(c) as amended can validly be applied to the instant case, it is necessary to discuss three separate questions:

1. Does the doctrine of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) as interpreted in certain later cases, require the application of state law rather than the Federal Rule?

2. May the amended Rule be retroactively applied in a situation like this in which the action was filed, and the motion to dismiss argued and submitted, before the effective date of the 1966 amendment?

3. Would application of the Rule to the instant case result in depriving Lockheed of any substantive right?

In raising the *Erie* problem, Lockheed makes two assumptions: (1) that state law governs, and (2) that state law would produce a different result than Rule 15(c). Both assumptions are incorrect. To be sure, Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) and Ragan v. Merchants Transfer Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) hold that a state statute of limitations should be applied by the Federal Court in the same way in which it would be applied by the state court. But these cases are not determinative. I believe their effect, at least in the present context, has been drastically limited by Hanna v. Plumer, 380 U.S. 460, 469–474, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *Hanna* holds that the federal procedural rules may be applied even in the face of conflicting state law. The rationale of *Hanna* dictates that amended Rule 15(c) should govern even if the state statute of limitations would protect the defendant in a state court action.[6] Even before *Hanna*, other courts had held that Federal Rule 15(c) governs and controls in relation-back situations as against the *Erie* doctrine and principles. Aarhus Oliefabrik, A/S v. A. O. Smith Corp., 22 F.R.D. 33 (E.D.Wisc.1958) (the prior cases are collected at Footnote 1, p. 35); cf. Gifford v. Wichita Falls & So. Ry., 224 F.2d 374 (5th Cir. 1955), cert. denied 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787 (1955). See also 3 Moore's, Federal Practice, § 15.15[2] p. 1018.

Furthermore, any benefit which Lockheed might claim from *Erie* and its progeny is completely destroyed by the fact that the result would have been no

---

6. See Vol. 1A Barron and Holtzoff, Federal Practice and Procedure, 1965 Pocket Part § 448.1, Footnote 43.8a; cf. Cone v. Shunka, 40 F.R.D. 12 (W.D.Wis.1966).

different if the instant action had been brought in the California state courts. Under California procedure, "Doe" pleading, i. e. the joinder of fictitious defendants, is allowed. It is the invariable practice to name "Doe" individuals and "Doe" corporations. In the state court, if a "Doe" corporation had been named and charged, Lockheed could have been served as that "Doe" corporation after the one-year limitations period, under the facts present here. See e. g. Day v. Western Loan & Bldg. Co., 42 Cal.App. 2d 226, 108 P.2d 702 (1940).[7]

So, the *Erie* doctrine is not applicable and, even if applicable, would avail Lockheed nothing.

As to the second question, i. e. the retroactivity problem, resort must be had to the retroactivity provision accompanying the new amendments of the Rules. It makes the amended rules which became effective July 1, 1966, applicable to:

> " * * * all proceedings in actions brought thereafter and also in all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies." (Letter from the Chief Justice dated February 28, 1966 transmitting the new rules to Congress; H. R. Doc. No. 391, 89 Cong., 2d Sess., at p. 20.)

I hold that the application of the amended rule to the instant case is both "feasible" and not such as to "work injustice". There is a clear holding by the Tenth Circuit Court of Appeals, under an earlier identical retroactivity provision, permitting application of new rules to a motion argued and submitted before their effective date. John R. Alley & Co. v. Federal Nat'l Bank, 124 F.2d 995 (10th Cir. 1942).

The third question, whether Lockheed is deprived of any substantive right, likewise presents no great difficulty. Title 28 U.S.C. § 2072 provides that no federal rule of procedure shall abridge or modify an existing substantive right. Cf. Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1940). Lockheed could not argue that § 2072 prohibits applying amended Rule 15(c) to achieve a relation back of the Amended Complaint. The Supreme Court has held that no party has any vested or substantive right in the protection of a statute of limitations. Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). Moreover, as demonstrated above, under the facts here, Lockheed has no benefit or right under the California statute of limitations of which it is conceivably being deprived.

Thus, I conclude that there is nothing unfair, improper or invalid in applying the amended rule to Lockheed under the facts before me.

### III

### THE SAME RESULT WOULD HAVE BEEN REACHED UNDER RULE 15(c) BEFORE ITS RECENT AMENDMENT

Professor Moore argues quite persuasively that the 1966 amendment of Rule 15(c) adds nothing to the power and discretion which the Court was given un-

---

7. There are no "Does" named in the instant Complaint because a Local Rule of this Court prohibits them. Local Rule 4(i) of this District provides:

> "(i) *Misjoinder of Fictitious Parties:*
> [U]nless otherwise ordered by the Court in a particular case, the Clerk shall refuse to accept for filing, in any civil action or proceeding originally commenced in this Court, any complaint wherein any party is designated and sought to be joined under a name which is alleged to be, or for other reasons unquestionably is, wholly fictitious, unless the complaint be accompanied by a dismissal as to every party designated by a fictitious name. (See Molner v. National Broadcasting Co., 231 F.2d 684, 687 (9th Cir. 1956).)"

der the old Rule, but merely clarifies and reinforces that pre-existing power and discretion. 3 Moore's, Federal Practice, § 15.15 [4.–2], p. 1045. The Advisory Committee's Note to the amendment buttresses this view. It characterizes the amendment as an amplification "to state more clearly" the intention of Rule 15(c), and the results desired thereunder.

There are many cases under old Rule 15(c) which permitted the substitution of a different party defendant under the relation-back doctrine after the statute of limitations had run. Various convenient rationalizations have been employed in these cases. In some, where the defendant named did not exist and the defendant who was intended to be named bore a quite similar name, the amendment and relation back were allowed on the ground the defect was only a "misnomer".[8] In other cases where the originally named defendant actually existed as a person or entity, amendment to name another defendant was allowed after the statute of limitations had run, because of the "close connection" between the two,[9] or because the plaintiff's mistake was likened to a misnomer.[10]

But a careful analysis of these cases leads me to the conclusion that all of them rest on essential considerations of fairness and represent holdings that a new defendant may be brought into the case after the statute has run against him, if under all of the circumstances it it fair to do so. A number of the cases have expressly considered the fairness question both in terms of whether the new defendant has had adequate notice of the facts within the limitations period,[11] and whether the plaintiff has been guilty of inexcusable neglect or delay.[12]

To be sure, there are contra cases. Some of them antedate old Rule 15(c).[13] Others unreasoningly rely on the antedating cases.[14] Others rely on state cases, assuming that state law governs.[15] That assumption, I submit is incorrect.[16] Still others may be explained as cases in which the Court considered the fairness of permitting a new defendant to be joined and refused to exercise its

---

8. See e. g. Grandey v. Pacific Indem. Co. 217 F.2d 27 (5th Cir. 1954); Sechrist v. Palshook, 97 F.Supp. 505 (M.D.Pa.1951).

9. Gifford v. Wichita Falls & So. Ry., 224 F.2d 374 (5th Cir. 1955), cert. denied 350 U.S. 895, 76 S.Ct. 153 (1955); County Theatre Co. v. Paramount Film Distrib. Corp., 166 F.Supp. 221 (E.D.Pa. 1958) (same officer, same address).

10. See e. g. Godfrey v. Eastern Gas & Fuel Associates, 71 F.Supp. 175, 177 (D.Mass. 1947); Williams v. Pennsylvania R. R., 91 F.Supp. 652 (D.Del.1950).

11. See e. g. Denver v. Forbes, 26 F.R.D. 614 (E.D.Pa.1960); Meltzer v. Hotel Corp. of America, 25 F.R.D. 62 (N.D. Ohio 1960); United States Construction Specialties Co. v. Travelers Ins. Co., 40 F.R.D. 316 (D.Colo.1966).

12. See e. g. McDonald v. Chrysler Motors Corp., 27 F.R.D. 442 (W.D.Pa.1961); cf. Adams v. Beland Realty Corp., 187 F.Supp. 680 (E.D.N.Y.1960).

13. See e. g. Davis v. L. L. Cohen & Co., 268 U.S. 638, 45 S.Ct. 633, 69 L.Ed. 1129 (1925); Mellon v. Arkansas Land & Lumber Co., 275 U.S. 460, 48 S.Ct. 150, 72 L.Ed. 372 (1928); Schram v. Poole, 97 F.2d 566 (9th Cir. 1938); Third Nat'l. Bank & Trust Co. v. White, 58 F.2d 411 (D.Mass.1932); Toledo Rys. & Light Co. v. McMaken, 17 F.Supp. 338 (N.D.Ohio 1936), aff'd 103 F.2d 72 (6th Cir. 1939), cert. denied 308 U.S. 569, 60 S.Ct. 82, 84 L.Ed. 477 (1939).

14. Royal Worcester Corset Co. v. White, 40 F.Supp. 267 (D.Mass.1941); Sanders v. Metzger, 66 F.Supp. 262 (E.D.Pa. 1946); Kerner v. Rackmill, 111 F.Supp. 150 (M.D.Pa.1953); Florentine v. Landon, 114 F.Supp. 452 (S.D.Cal.1953); Wagner v. New York, Ontario & Western Ry., 146 F.Supp. 926 (M.D.Pa.1956); Robbins v. Esso Shipping Co., 190 F.Supp. 880 (S.D.N.Y.1960).

15. See e. g. St. Paul Fire & Marine Ins. Co. v. Continental Bldg. Operating Co., 137 F.Supp. 493 (W.D.Mo.1956).

16. See discussion of the *Erie* problem in II above. Cf. Gifford v. Wichita Falls & So. Ry., supra, footnote 9.

discretion to do so.[17] The remainder of the contra cases may be explained as mistaken and unduly restrictive interpretations of old Rule 15(c) which the recent amendment was designed to prevent.

Thus, although it is admittedly *dictum* in the instant situation, I am of the opinion that the same result could and should have been reached under old Rule 15(c).

Lockheed's Motion to Dismiss is denied.

---

17. Nayer v. Robertshaw-Fulton Controls Co., 195 F.Supp. 704 (D.Mass.1961); see e. g. Hoffman v. Halden, 268 F.2d 280, 304 (9th Cir. 1959).