480 P.2d 30

**DRUG, COSMETIC AND BEAUTY TRADES SERVICE, INC.,**
**Petitioner,**

v.

**Honorable Yale McFATE, Judge of the Superior Court of Arizona, Maricopa County, and Elizabeth Smagacz and Anthony Smagacz, Respondents.**

**No. 1 CA–CIV 1526.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 1, 1971.

Rehearing Denied April 5, 1971.

Review Denied May 4, 1971.

8

Browder, Gillenwater & Daughton, by Robert W. Browder, Phoenix, for petitioner.

Harrison, Strick, Myers & Singer, by Mark I. Harrison, Phoenix, for respondents Elizabeth Smagacz and Anthony Smagacz.

JACOBSON, Presiding Judge.

This special action arises out of litigation involving a claim by insured beauty salon operators (the respondents Smagacz) that their enterprise liability insurer wrongfully failed to settle a customer's claim within policy limits. The specific question now before us is whether the petitioner, a claims investigating and evaluating concern which was brought into the case by amendment to a complaint originally seeking relief only against the insurance company is entitled to dismissal by reason of the statute of limitations.

On April 1, 1958, the respondents Smagacz administered a permanent wave to one Viola Eck. Mrs. Eck suffered adverse results, and brought a suit alleging negligence, against the Smagaczes for damages. The Smagaczes were covered in their business by a policy of liability insurance issued by Employers Liability Assurance Corporation, Ltd. (hereinafter "Employers"), a defendant in the litigation in the Superior Court but not a party to the instant special action. As is alleged by the Smagaczes in their most recent complaint,

"Under the terms of the foregoing insurance policy, defendant Employers became obligated to take sole and exclusive control of the investigation of Mrs. Eck's claim for damages arising out of the negligent administration of the permanent wave described hereinabove, as well as all negotiations for settlement of said claim, and the defense of any action for damages."

Mrs. Eck sued for the sum of $26,900. The applicable limit of Employers' insurance policy was $5,000. According to the Smagaczes' complaint, Employers made one settlement offer, in the amount of $500. Mrs. Eck's claim went to trial and the jury returned a verdict in her favor and against the Smagaczes in the amount of $10,000. The Smagaczes are now seeking compensatory and punitive damages against Employers on the asserted grounds of (1) bad faith refusal to settle at or within policy limits, (2) negligence, (3) "strict liability," and (4) fraud.

The jury returned its verdict in favor of Mrs. Eck on April 27, 1966. It seems clear from the Smagaczes' allegations that judgment was entered on the verdict on June 15, 1966, and it is alleged that Employers satisfied the insured portion of "said judgment" with interest on September 15, 1966. On September 29, 1967, the Smagaczes filed their original complaint against the insurance company, the sole defendant. A first amended complaint was filed some three months later, correcting the name of the insurance company. Answering these complaints, Employers admitted the Smagaczes' allegation that under the terms of its policy it "became obligated" to investigate and exercise exclusive control over the settlement negotiations and the defense of the Eck claim.

The Smagaczes filed a second amended complaint by leave of court on February 20, 1970. This second amended complaint named the petitioner Drug, Cosmetic and Beauty Trades Service, Inc. (hereinafter "Trades Service") as an additional defendant. It alleges, on information and belief, that Trade Service is a corporation which "* * * evaluates claims asserted against beauticians and beauty salon operators and advises and/or directs, and/or controls the settlement negotiations pertaining to such claims." It also alleges that:

"Following the commencement of Mrs. Eck's lawsuit, the defendant Beauty Trades Service became actively involved in the evaluation and settlement discussions concerning Mrs. Eck's claim, and in performing these functions * * * defendant Beauty Trades Service acted as the agent and/or principal of defendant Employers. Plaintiffs had no knowledge of the identity of defendant Beauty Trades Service or of said defendant's involvement in the evaluation, advice and settlement of Mrs. Eck's lawsuit until said information was furnished to plaintiffs by defendant Employers in answers to interrogatories served on plaintiffs on December 5, 1969, and on January 20, 1970."

On the basis of these allegations, the Smagaczes seek recovery against Trades Service on each of the same stated grounds as are asserted against Employers, excepting only the fourth asserted ground, fraud.

Trades Service filed a motion to dismiss the second amended complaint on the basis that the claims against it were barred by the two year statute of limitations of ARS § 12–542. The motion was denied, and Trades Service seeks relief here.

Where the averments of a complaint conclusively show that the claim asserted is barred by the statute of limitations, it is subject to a motion to dismiss. Ross v. Ross, 96 Ariz. 249, 252, 393 P.2d 933, 935 (1964). And if petitioner's motion in the trial court was well taken, we think that under all of the circumstances relief by

special action here is appropriate. *Cf.* Grobe v. McBryde, 105 Ariz. 577, 468 P.2d 936 (1970), and Garcia v. Frey, 7 Ariz. App. 601, 442 P.2d 159 (1968).

It is clear that any claim by the Smagaczes against Trades Service growing out of the Eck matter must have accrued no later than at the time Mrs. Eck's judgment became final at the expiration of the time for appeal, 60 days after judgment was entered on June 15, 1966. It is equally clear that if the two-year limitation of ARS § 12–542 is applicable, the claim against Trades Service was time-barred long before the Smagaczes filed their second amended complaint in 1970.

Trades Service bases its position on the applicability of either subdivision 1 or subdivision 3 of ARS § 12–542. These provisions read as follows:

"§ 12–542 * * *

"There shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

"1. For injuries done to the person of another.

\* \* \* \* \* \*

"3. For trespass for injury done to the estate or the property of another."

The Smagaczes, on the other hand, argue the applicability of the six-year limitation of ARS § 12–548, relating to debts evidenced by or founded upon a contract in writing.

We are mindful of the principle that where there is a substantial doubt as to which of two limitation periods is applicable, the longer should be held to apply, *see* O'Malley v. Sims, 51 Ariz. 155, 165, 75 P.2d 50, 54–55 (1938), but we have little difficulty in rejecting the six-year limitation, since although the Smagaczes had a contract in writing with their insurer, Employers, they had no contract of any kind with Trades Service. The Smagaczes do not urge the applicability of any other alternative statute of limitations. In our view, the claims asserted by the Smagaczes

**10**

against Trades Service concerned their "property" or "estate" and were fairly within the terms of subdivision 3 of ARS § 12–542, as construed and applied in Marsh v. Hawkins, 7 Ariz.App. 226, 229, 437 P.2d 978, 981 (1968). Accordingly, the two-year limitation period is applicable.

■ The Smagaczes next argue that the statute of limitations was tolled as it affects their claim against Trades Service because the identity of Trades Service and its involvement in the investigation of the Eck claim was concealed from them by Employers. From the standpoint of legal authority, the Smagaczes premise this argument on cases such as Acton v. Morrison, 62 Ariz. 139, 155 P.2d 782 (1945), subsequent appeal, Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590 (1948), where a known party fraudulently concealed his own prior negligent conduct. Purported factual predicates for the argument include the. conclusory allegation that Employers was or became Trades Service's "agent" *vis a vis* the Smagaczes, and an assertion that when Employers admitted that it "became obligated" to exercise control over investigation and defense of the Eck Claim, it thereby misled the Smagaczes and concealed the participation of Trades Service.

We must view the suggested factual predicate with our feet on *terra firma,* and not in the easier and more semantically alluring province of Alice's Wonderland. With that in mind, we fail to see how, absent circumstances which are in no way suggested here, when A and B have a bilateral contract, C can relegate B to the status of agent and assume the position of principal with respect to B's contractual obligations to A. In other words, it was Employers' alleged and admitted obligation to investigate and control defense of the Eck claim, and Employers *and only* Employers had a principal's duty to discharge that contractual obligation. The essence of the Smagaczes' claim lies in their contractual relationship with Employers, and no facts are pleaded which would tend to support the conclusorily alleged topsy-turvy principal-agent relationship. Nor do we think it can be said that Employers, by admitting its contractual obligation as alleged by the Smagaczes, concealed the involvement of Trades Service or misled the Smagaczes. The Smagaczes also argue that answers by Employers to certain interrogatories were misleading, but the two-year period of limitations had already run prior to the time these interrogatories were propounded and answered in the later months of 1968.

■ The Smagaczes' last contention is that the claims of their second amended complaint against Trades Service "relate back" under Rule 15(c) of the Rules of Civil Procedure, 16 A.R.S. to the time of filing of their original complaint. Our Rule 15(c), amended like its Federal counterpart in 1966, reads as follows:

"15(c) *Relation back of amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment *changing the party* against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) *knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.* Service of process in compliance with Rules 4(d) (7) or (8) satisfies the requirement of clauses (1) and (2) hereof with respect to the state, county, municipal corporation or any agency or officer thereof to be brought into the action as a defendant." (Emphasis added.)

Trades Service concedes that the "same transaction or occurrence" test of the first sentence of 15(c) is met by the Smagaczes' second amended complaint against it, but takes the position that relation back is appropriate only when the newly named party is *substituted for* the originally named defendant, and not when the new party is brought into the litigation as an *additional* party defendant. The Smagaczes, relying heavily upon Meredith v. United Air Lines, 41 F.R.D. 34 (S.D.Cal.1966), maintain that the principle of relation back applies to added parties, and not only to substituted parties.

Professor Moore's treatise takes the view that the *Meredith* case correctly applies the 1966 amendment to the Federal Rule, and that the latter permits relation back in the case of added parties. 3 Moore's Federal Practice § 15.15[4.—2] at 1049 (1968). The late Judge Holtzoff, on the other hand, held that the principle of relation back does not apply to additional parties. King v. Udall, 266 F.Supp. 747, 749 (D.D.C.1967).[1]

We have recently had occasion to cite Professor Moore's treatise approvingly in a case involving no new parties and only the first sentence of Rule 15(c). See Neeriemer v. Superior Court, 13 Ariz.App. 460, 477 P.2d 746 (filed December 16, 1970). Slow as we are to disagree with his fine work, we find no basis in the clear and carefully drawn terms of our amended Rule 15(c), amended Federal Rule 15(c), or in the revisors' comments pertinent to either[2] for a conclusion that the principle of relation back is to be given effect in the case of added as opposed to substituted parties. If the term "changing the party" in our amended Rule can conceivably be considered ambiguous on the subject, the language which we have emphasized in quoting our amended Rule following the designation "(2)" clearly indicates that relation back is to work only against a party substituted for an originally named defendant.

In our view, the *Meredith* case is incorrect insofar as it may be considered authority for a general rule that an amendment adding a party relates back under present 15(c).[3] Had the revisors or the courts adopting the amended version of 15(c) intended implementation of such a general rule, so vitally affecting both individual litigants and the administration of justice generally, they could have readily employed language appropriate to the purpose. We think that amended 15(c) must be applied as written according to its plain

1. *See also*, People of Living God v. Star Towing Co., 289 F.Supp. 635, 641–642 (E.D.La.1968), and Storey v. Garrett Corp., 43 F.R.D. 301, 304 (C.D.Cal. 1967), and cases cited. A comprehensive annotation on the general subject appears at 8 A.L.R.2d 6 (1949).

2. *See* State Bar Committee Note—1966, 16 ARS, Ariz.R.Civ.P., Rule 15 (Supp. 1970–71), and Notes of Advisory Committee on Rules—1966 Amendment, 28 U.S.C., F.R.Civ.P., Rule 15.

3. Unlike the present case, *Meredith* does not present an unabashed, clearcut "added party" situation. The plaintiffs in *Meredith* originally sued United Air Lines and the United States of America for injuries suffered by a United Air Lines passenger when the carrier plane veered to avoid collision with a military airplane which bore United States military insignia. Later, after the limitation period, it was learned that an aircraft manufacturer (Lockheed) may have been the owner and responsible party with respect to the liability which the plaintiffs had been asserting against the United States. Thus, while plaintiffs brought Lockheed into the litigation without dropping the United States as a party defendant, it does not appear that the sum total of asserted liabilities was increased. Noting this decision and its interesting construction of the term "changing the party", Professors Wright and Elliott use the terms "humane" and "sensible", but go on to state that " * * * but both the language and the history of the amendment suggest that it was directed at the case where the wrong defendant was sued and a new defendant is to be substituted." 1A Barron and Holtzoff, Federal Practice and Procedure § 451, at n. 82.1a. (Rules ed., Supp.1969).

terms, and that Judge Holtzoff's conclusion in King v. Udall, *supra*, is correct.

In view of our holding with respect to the scope of 15(c), we need not consider petitioner's further contention that even if relation back were available against an added as opposed to a substituted party, the stated conditions precedent to its application were not met. *See* Hartford Insurance Group v. Beck, 12 Ariz.App. 532, 472 P.2d 955 (1970).

The issuance by this court of its mandate herein will constitute an order directing dismissal of the respondent plaintiffs' second amended complaint insofar as it seeks recovery from petitioner.

HAIRE and EUBANK, JJ., concur.