**Margaret A. KINNALLY**

v.

**BELL OF PENNSYLVANIA, Myron Borsdam, Gilbert A. Wetzel, and Kenneth Bosch.**

Civ. A. No. 88–7199.

United States District Court, E.D. Pennsylvania.

Oct. 17, 1990.

James F. Young, for plaintiff.

Deborah Fitzgerald, Asst. U.S. Atty., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff Margaret A. Kinnally, a former employee of Bell Telephone Company of Pennsylvania ("Bell"), filed this suit against Bell and three of its employees. Her amended complaint alleges violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, including discrimina-

tion on the basis of sex (Count I) and retaliatory discharge (Count II), and violations of Pennsylvania common law, including intentional infliction of emotional distress (Count III), promissory estoppel (Count IV), and wrongful discharge (Count V). With the exception of Count IV, in which plaintiff demands judgment specifically against defendants Bell and Wetzel, all counts of the amended complaint are directed against all of the above-listed defendants. During the period at issue, defendant Gilbert A. Wetzel was President of Bell, and defendant Myron Borsdam was a manager in Bell's construction group. During most of the period at issue, Kenneth Bosch was plaintiff's direct supervisor. Now before this court is defendants' jointly filed motion for partial summary judgment.

## FACTUAL BACKGROUND

For purposes of this motion, defendants concede plaintiff's version of the background facts. Plaintiff, an employee of Bell since 1969, was promoted to the position of Outside Facilities Engineer ("OFE") in October, 1984. She was the only female OFE in her unit. In 1986, defendant Bosch became her new supervisor. Thereafter, plaintiff was subjected to a regime of misogynous comments and other derogatory remarks. Defendant Borsdam made vulgar and suggestive comments in her presence, some of which were directed toward plaintiff, and showed a videotape of rabbits mating at a meeting where she was the only female present. Defendant Bosch unnecessarily singled her out as a woman on a memorandum recording attendance rates [1] and repeated to plaintiff comments made by Borsdam and others questioning the capacity of women to work as engineers. After a history of superior work performance, plaintiff received an unjustifiably poor work evaluation from defendant Bosch, intended as a further means of harassment and intimidation.

---

**1.** In the top margin of the memorandum, the following remark was apparently jotted down and signed by defendant Bosch: "All male engi-neers in our group had perfect attendance!" See Exhibit H, attached to defendant's motion for partial summary judgment.

On March 30, 1987, plaintiff suffered a mental breakdown, alleged to be the direct result of the barrage of insult she was exposed to. She was put on paid disability leave until September 15, the date on which her therapist said she could return to work. On May 4, while on leave, plaintiff sent a letter to defendant Wetzel, describing the difficulties and humiliation she had experienced at Bell. Wetzel responded by letter of June 1. The letter represented that he would direct the Personnel Department's equal employment opportunity staff to conduct an investigation, and conveyed his assurance that the situation would be resolved.

On September 9, still on leave, plaintiff filed a complaint before the Pennsylvania Human Relations Commission ("PHRC"). The complaint was cross-filed before the Equal Employment Opportunity Commission ("EEOC"). Bell was the only respondent listed by plaintiff in her complaint.

Upon termination of her disability leave on September 15, plaintiff obtained Bell's approval to go on paid vacation leave until October 6. When plaintiff did not return to work on October 6, Bell placed her temporarily on unpaid leave and advised her by letter of October 26 that she could return to work at any of four locations but would be removed from the payroll if she failed to return to one of them by November 2. Plaintiff did not return, and her employment was terminated November 2. Plaintiff alleges that her decision not to return was based on defendant Wetzel's failure to arrange for proper investigation and resolution of her grievances, despite representations in his June 1 letter that he would do what was necessary to improve the situation.

PHRC held a fact-finding conference on November 10, 1987. On April 6, 1988, PHRC dismissed plaintiff's complaint. On June 20, 1988, EEOC informed her of her right to sue. The original complaint in this action was filed September 16, 1988 and listed Bell and Borsdam as defendants. An amended complaint was filed March 3, 1989, adding Wetzel and Bosch as defendants.

## DISCUSSION

### I. Sexual Discrimination

In Count I of her amended complaint, plaintiff alleges discrimination on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e–2. The individual defendants have moved for dismissal: All of them urge that the count should be dismissed on certain procedural grounds, noting in particular plaintiff's failure to list their individual names in her PHRC/EEOC complaint and the time-bar imposed by the relevant statute of limitations. In addition, defendant Wetzel contends as a matter of substantive law that plaintiff's claim is not cognizable against him. I will address each of these issues in turn.

### 1. Failure to Name Individual Defendants in PHRC/EEOC Complaint

Defendants first contend that, except with respect to defendant Bell, plaintiff failed to comply with Title VII's requirement that a complainant file charges in an EEOC proceeding before seeking redress in federal court. See 42 U.S.C. § 2000e–5(f)(1). In her preliminary pleadings before the PHRC/EEOC, plaintiff listed Bell as the sole respondent to her complaint. Individual defendants claim prejudice as a result of having to face charges in this court without having first been given the opportunity to achieve conciliation through less costly administrative channels. Plaintiff does not deny that she was aware of the role played by these individuals at the time of her initial filing. While no individual respondents were formally listed on the face of her complaint, a factual statement submitted as part of her administrative pleading described the conduct of each of the individuals now listed as defendants in this case.

This Circuit has recognized that the "jurisdictional requirements for bringing suit under Title VII should be liberally construed." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 887–88 (3d Cir.1977); *Hart v. J.T. Baker Chemical Corp.*, 598 F.2d 829, 831 (3d Cir.1979). This is especially so where,

as here, the preliminary pleadings were substantially crafted *pro se*. In such circumstances, courts not only consider the parties formally listed as respondents, but look to the plaintiff's "factual statement" as "the crucial element" in determining whether the requirements of the pleading have been met. See *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462–63 (5th Cir.1970); *Acampora v. Boise Cascade Corp.*, 635 F.Supp. 66, 71 (D.N.J.1986).

In pleading before the PHRC/EEOC, plaintiff may not have foreseen the necessity or desirability of formally listing individual respondents. Yet, in describing the conduct of these individuals in the factual statement accompanying her complaint, she satisfied the basic procedural requirement of her PHRC/EEOC pleadings. The purpose of filing before the PHRC/EEOC is to alert concerned parties of the opportunity for voluntary conciliation without the animosity, expense, and publicity of litigation. *Glus*, 562 F.2d at 888; *Peterson v. Lehigh Valley District Council*, 453 F.Supp. 735, 739 (E.D.Pa.1978). Although the individual defendants' names were not included where they should have been, these individuals received every indication that their conduct was being formally reviewed by the PHRC. In the body of her complaint, plaintiff referred to the "President of Bell of Pennsylvania" and to "fellow engineers and supervisors." Prior to the PHRC fact-finding hearing, each of the currently-named individual defendants had communications with Bell's equal employment opportunity investigator concerning the allegations contained in the complaint.[2] Defendants Borsdam and Bosch were actually present at the hearing.

In short, the individual defendants received ample notice of the need and opportunity to conciliate while this matter was still pending before the PHRC/EEOC. Accordingly, there is no reason to preclude suit against these defendants at this stage. *Pao v. Holy Redeemer Hosp.*, 547 F.Supp. 484, 495 (E.D.Pa.1982).

### 2. Statute of Limitations

■ Defendants next contend that plaintiff's allegations against defendants Bosch and Wetzel are time-barred. Plaintiff does not dispute that the relevant statute of limitations expired on September 22, 1988. Nor does she dispute that Wetzel and Bosch were not named as defendants until March 3, 1989, when she filed her amended complaint. However, plaintiff contends that her amended complaint sufficiently "relates back" to her original complaint, filed within the appropriate statutory period, and thus survives this challenge. See FRCP 15(c).

In *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1985), the Supreme Court formulated a four-prong test to determine when the doctrine of relation back will apply:

(1) The basic claim must have arisen out of the conduct set forth in the original pleading;

(2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense;

(3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and

(4) the second and third requirements must have been fulfilled within the prescribed limitations period.

Defendants do not dispute that plaintiff meets the first prong. With regard to the second prong, as qualified by the fourth prong, defendants deny that defendants Wetzel and Bosch received appropriate notice within the required period since the amended complaint was not filed until March 3.

■ In applying *Schiavone*, courts have reached mixed results in determining when and how the notice requirement of its second prong may be satisfied. Compare *Meredith v. United Air Lines*, 41 F.R.D. 34 (D.C.Cal.1966) (administrative hearing provides sufficient notice of possible claim) and *Craig v. United States*, 413 F.2d 854 (9th Cir.1969) (suit of one defendant does

---

**2.** Plaintiff's answer to defendants' motion for partial summary judgment, p. 8.

not satisfy notice requirement for suit of another defendant under Rule 15(c)). The conclusion of a growing number of courts and commentators is that sufficient notice may be deemed to have occurred where a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means. Of course, such informal notice must be achieved within the prescribed statutory period, and the added party must suffer no prejudice as a result of relation back. See, e.g., *Miles v. Department of the Army*, 881 F.2d 777 (9th Cir.1989) (upholding amended complaint where new party added beyond limitations period was aware of suit through counsel it shared with named defendant); *Andino v. Alcan Aluminio do Brasil*, 652 F.Supp. 415, 419 (D.C.Puerto Rico 1987) (president of corporation received constructive notice of action originally brought against corporation); *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171 (3d Cir.1977) (restaurant manager received sufficient notice when he saw complaint filed against restaurant and unknown employee); 6 Wright & Miller, Federal Practice, § 1498, p. 123 ("finding that notice, although informal, is sufficient ... frequently is dependent upon determining whether the party to be added would be prejudiced").

In the present context, defendants Wetzel and Bosch had every reason to expect that they could properly be included as adverse parties in this lawsuit. Preliminary in-house investigations and administrative proceedings should have made clear their potential entanglement early on.

This court will therefore follow those authorities that permit relation back on the basis of informal notice received within the statutory period. This approach seems particularly appropriate here since defendants Wetzel and Bosch have made no allegation of any prejudice resulting from their postponed inclusion in plaintiff's complaint.[3] By virtue of their close association with Bell and their general familiarity with this litigation from its incipient stages, these defendants maintained a constant knowledge of their potential implication in this action and thus received timely notice in a manner that satisfies *Schiavone*'s second prong. Their names, after all, were included in the body of plaintiff's original complaint.[4]

■ Defendants further contend that the plain terms of *Schiavone*'s third prong have not been satisfied since failure to include defendants Wetzel and Bosch in the original complaint cannot be traced to a "mistake concerning identity." *Schiavone*'s third prong suggests that such a mistake is the only permissible ground for adding a party under the doctrine of relation back. Defendants claim that it is inconceivable that plaintiff could have made a mistake of identity since she knew precisely the role played by each of the individual defendants at the time she filed her original complaint.

In my view, defendants read the "mistake" provision too narrowly. *Schiavone*'s third prong tracks the actual language of Rule 15(c).[5] Under that Rule, a

---

**3.** It is difficult to imagine any prejudice being visited on these defendants as a result of their postponed inclusion, since in preparing their individual defenses they can presumably rely to a large extent on investigations and preparations already undertaken by Bell.

**4.** Original complaint ¶¶ 10, 14, 15.

Defendants argue that service of the original complaint on defendant Bell was not formally perfected until *after* the Title VII limitations period had expired, and that consequently that complaint cannot serve as a timely point of origin to which amended pleadings could conceivably relate back in accordance with *Schiavone*'s fourth prong. The argument is unpersuasive: the original complaint was filed within the prescribed statutory period, and Bell filed its

answer shortly thereafter. Such answer was filed ten days before the date on which, according to the affidavit of Maureen T. Levine, service was formally perfected. Thus, it would appear that informal notice was had prior to service, and possibly even as early as the filing of the PHRC/EEOC complaint. Cf. *Meredith, supra.* There is therefore no reason to assume that *Schiavone*'s fourth prong has not been satisfied.

**5.** Rule 15(c) states in pertinent part: "An amendment changing the party against whom a claim is asserted relates back if ... within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the

mistake is not limited to instances in which the wrong party is blamed while the real culprit remains unknown. A mistake also includes errors in legal form, for example: where a plaintiff has full knowledge of all relevant actors but lists the technically incorrect party in her complaint. *Brooks v. Hartford Inc.*, 715 F.Supp. 1034 (D.Kan. 1989); Notes of Advisory Committee on Rules (1966 Amendment) (discussing hypothetical case in which plaintiff filing suit for social security benefits mistakenly lists the United States, rather than the Secretary of Health, Education and Welfare, as defendant). Plaintiff filed her original complaint *pro se*. Not fully versed in the law, she made a mistake by not listing individual parties who could technically have been included as defendants. This court will allow her to correct such mistakes provided that her amended pleadings sufficiently relate back, as here indeed they do.

### 3. Failure to State a Cause of Action against Defendant Wetzel

Defendants contend that plaintiff's allegations do not amount to a cause of action under Title VII against defendant Wetzel, the President of Bell. Defendants claim that plaintiff fails to cite any specific conduct by Wetzel that may be characterized as discrimination on the basis of sex, and that plaintiff has produced insufficient evidence to sustain her claim that Wetzel responded inadequately to her reported grievances.

■ The inaction of executive and management personnel may serve as a basis for liability under Title VII even where these high-level employees have played no direct role in the alleged discrimination. See, e.g., *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir.1989); *Taylor v. Jones*, 653 F.2d 1193, 1199 (8th Cir.1981) ("toleration of a discriminatory atmosphere alone gives rise to a cause of action"); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184,

1186 (2d Cir.1987) (employer with knowledge that co-workers are sexually harassing employees "may not stand idly by"). According to the complaint, Wetzel knew that plaintiff had accused Bosch and Borsdam of engaging in sexual harassment, yet he refrained from undertaking appropriate remedial measures in response. On their face, then, plaintiff's allegations with regard to defendant Wetzel fall within the bounds of recognized theories of liability under Title VII.

■ Nevertheless, even if plaintiff has stated a valid cause of action, this court must determine whether she has produced evidence sufficient to create a genuine issue of material fact. FRCP 56(e). Relying on deposition testimony, plaintiff claims that the investigations authorized by defendant Wetzel were wholly inadequate to remedy the situation of which she complained. Plaintiff alleges that neither she nor any of her co-workers was ever contacted with regard to the reported incidents, and that the investigations amounted to little more than having a Bell equal employment opportunity officer conduct initial interviews with defendants Bosch and Borsdam.[6] Plaintiff alleges, moreover, that she is aware of nothing which was done to rectify the situation she described. Defendants emphasize that, after authorizing an investigation, Wetzel provided plaintiff with an option of four alternative locations at which her employment could resume, and that plaintiff never returned to Bell to ascertain whether appropriate remedial steps had been taken.

At the present juncture, it is sufficient to note that whether Wetzel adequately responded to plaintiff's reported grievances remains a disputed issue of material fact that cannot be resolved at this stage.

## II. Retaliatory Discharge

■ Section 704(a) of Title VII expressly prohibits retaliatory conduct ("[i]t shall be

---

party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

**6.** Plaintiff's answer to defendant's partial motion for summary judgment, pp. 14–15.

an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge."). 42 U.S.C. § 2000e–3.[7] The order and burden of proof required to substantiate such a claim are well established. Plaintiff-dischargee must first put forward a prima facie case of retaliation. The burden then shifts to defendant-employer who must articulate a legitimate, nondiscriminatory reason for the employee's discharge. Then, once defendant has carried this burden, plaintiff must prove by a preponderance of the evidence that the defendant's proffered reasons "were not its true reasons, but were a pretext" for the discharge. See *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 250–59, 101 S.Ct. 1089, 1092–97, 67 L.Ed.2d 207 (setting forth allocation of proof under Title VII); *Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 73 (3d Cir.1986) (holding that *Burdine* pattern also applies to claims of retaliation).

In the present case, defendants have responded to plaintiff's prima facie allegations by claiming that her discharge was the legitimate result of her refusal to report back to work at the end of an extended leave. Defendants allege, and plaintiff does not deny, that she was offered a choice of four locations at which to resume work and was notified in advance that failure to report to at least one of them by a certain date would result in termination. The burden thus shifts back to plaintiff to expose defendants' proposed explanation as merely pretextual.

In my judgment, plaintiff fails to meet her burden at this stage. She has produced virtually no evidence, either by affidavit or by deposition, to rebut defendant's proffered reason for her discharge. In her deposition testimony, plaintiff does allege an awareness of other employees who, after filing complaints against the company, faced retaliation in the form of gossip and ostracism. Yet, these allegations, whatever their implication, have no specificity with regard to plaintiff's case. As further evidence of retaliatory conduct, plaintiff alleges that Bell reneged on an agreement to postpone making a termination decision at least until PHRC had completed its proceedings. This allegation suggests an alternative theory of the discharge, one that is so very vague as to be entirely insufficient to support a finding that defendant's undisputed explanation is pretextual. *Accord Summers v. Allis Chalmers*, 568 F.Supp. 33 (N.D.Ill.1983).

### III. Intentional Infliction of Emotional Distress

■ Defendants contend that the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 *et seq.*, bars plaintiff's common law claim for intentional infliction of emotional distress by providing an exclusive statutory means by which an employee injured in the course of employment can recover against her employer. See section 303(a), 77 P.S. § 481(a) ("The liability of an employer under this act shall be exclusive."). Defendants rely on *Poyser v. Newman & Co.*, 514 Pa 32, 522 A.2d 548 (1987), in which the Supreme Court of Pennsylvania held that the Act bars an employee's action against an employer for work-related injury even where the injury is alleged to be intentional. A number of Pennsylvania federal courts have followed *Poyser* to preclude recovery against an employer for work-related intentional infliction of emotional distress.[8] See *Glickstein v. Consolidated Freightways*, 718 F.Supp. 438 (E.D. Penn.1989); *McBride v. Bell of Pennsylvania*, No. 89–0243, slip op. at 3, 1989 WL 71545, 1989 U.S.Dist. LEXIS 7177 (E.D.Pa.

---

7. It should be noted that the procedural contentions raised by the individual defendants in seeking dismissal of Count One, and discussed above, apply to Count Two as well. I rejected those contentions as they apply to Count One and, for the same reasons, reject them as to Count Two as well.

8. Pennsylvania courts have yet to determine clearly whether the tort of intentional infliction of emotional distress should be recognized as an actionable tort in this state. However, the Third Circuit has held that, until the Pennsylvania courts issue a definite statement to the contrary, it will continue to regard such a cause of action as cognizable. *Williams v. Guzzardi*, 875 F.2d 46, 50–52 (3d Cir.1989).

1989); *Vasys v. United Engineers and Constructors*, No. 88–4323, slip op. at 4, 1988 WL 99689, 1988 U.S.Dist. LEXIS 10751 (E.D.Pa.1988).

To avoid *Poyser* and its *sequelae*, plaintiff directs our attention to section 301(c), 77 P.S. § 411, of the Act:

(1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe.... The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer.

Plaintiff claims that this section effectively abrogates the exclusivity provision of the Act, allowing for suits at common law in the exceptional circumstances of intentional tort.

The difficulty with plaintiff's argument is that section 301(c) did not escape the attention of Chief Justice Nix, who wrote for the Court in *Poyser*. To the contrary, the Chief Justice was at pains to point out, 522 A.2d at 551, that (1) section 301(c) excludes from the category of compensable injuries "an injury caused by an act of a third person *intended* to injure the employe because of reasons personal to him" (emphasis added by the court), and (2) "under section 205, 77 P.S. § 72, which immunizes an employer from tort actions for harm caused to a fellow employee, an exception is expressly made for the *intentional* infliction of harm" (emphasis added by the court). Chief Justice Nix then added: "Since it is clear that the legislature had the issue of intentional harm in mind, and yet did not mention it in connection with section 303(a), we are constrained to conclude that the legislature did not intend

the result for which the appellant argues." *Id.*

Accordingly, pursuant to section 303(a), Bell, as plaintiff's employer, is entitled to dismissal of plaintiff's claim of intentional infliction of emotional distress. But section 303(a) does not insulate the individual defendants from liability. Section 205, discussed in tandem with section 301(c) in Chief Justice Nix's opinion in *Poyser*, expressly contemplates fellow employee liability "for intentional wrong." [9] See *Barber v. Pittsburgh Corning Corp.*, 521 Pa. 29, 555 A.2d 766, 770–71 (1989).

The individual defendants contend, however, that, even if plaintiff's claim of intentional infliction of emotional distress is not precluded by statute, this court should dismiss it because their alleged conduct falls short of the "extreme" and "outrageous" behavior necessary to trigger such a tort. See *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) and authorities cited therein. Plaintiff concedes that it is a rare thing, under Pennsylvania law, for workplace activity to rise to the necessary level of outrageousness, but argues that there are circumstances in which the courts have evinced readiness to recognize a cause of action for intentional infliction of emotional distress where allegations of sexual discrimination and harassment are involved. See *id.*; *Shaffer v. National Can Corporation*, 565 F.Supp. 909 (E.D.Pa.1983); *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 311 (M.D.Pa. 1988).

The Third Circuit recently sought to elucidate the circumstances in which such a claim is cognizable:

[A]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress. As we noted in *Cox*, 861 F.2d at 395–96, 'the only instance in which courts applying Pennsylvania law have found conduct out-

---

9. § 72 Liability of fellow employe
 If disability or death is compensable under this act, a person shall not be liable to anyone at common law ... for any act or omission occur-

ring while such person was in the same employ as the person disabled or killed except for intentional wrong.

rageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.' *See, e.g., Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 311 (M.D.Pa.1988). *The extra factor that is generally required is retaliation for turning down sexual propositions.*

*Andrews v. Philadelphia*, 895 F.2d 1469, 1487 (3d Cir.1990) (emphasis added).

However disturbing it may be, the regime of derision and intimidation alleged on the facts of the present case falls short of this prescription. Plaintiff does not claim to be either the recipient or the victim of any overt propositions. Accordingly, her claim of intentional infliction of emotional distress must be dismissed.

IV. Promissory Estoppel

■ In order to create liability on the basis of promissory estoppel under Pennsylvania law:

a promise must be of such a nature and made under such circumstances that the promisor should reasonably anticipate that it will induce action or forbearance of a definite and substantial character on the part of the promisee. Further, the promise must actually induce such action or forbearance and the circumstances must be such that injustice can only be avoided by enforcement of the promise.

*Universal Computer Systems, Inc. v. Medical Services Association*, 628 F.2d 820, 824 (3d Cir.1980); Restatement (Second) of Contracts, § 90 (1981).

Plaintiff's claim of promissory estoppel against Bell and Wetzel is based entirely upon the following representations contained in defendant Wetzel's letter of June 1:

it has indeed been a long-standing policy of Bell of Pennsylvania that employees have a right to work in an environment free from any type of discrimination including freedom from sexual harassment. Therefore, I have directed the Personnel department's Equal Employment Opportunity staff to conduct an investigation of the entire matter.

I appreciate your bringing this situation to my attention and you may be assured that it will be dealt with promptly, fully and fairly. You will be kept abreast of developments and I am sure we can resolve this matter to everyone's satisfaction.

I conclude that plaintiff has failed to state a valid claim. The implied and allegedly unfulfilled promises made by Wetzel form an inadequate basis for a claim of promissory estoppel under Pennsylvania law. First, Wetzel could not reasonably have anticipated that his letter would induce plaintiff to undertake a substantial forbearance. If anything, such a letter conveys that he was encouraging plaintiff to resume normal activity as soon as possible on the understanding that others would undertake appropriate measures on her behalf. Furthermore, plaintiff concedes in her deposition testimony that, in deciding not to go back to work pending resolution of her grievances, she was relying not on Wetzel's representations that he would pursue a course of remedial action but rather on the outcome of the administrative proceedings before the PHRC:

Q. And once again, you were now putting your reliance, so to speak, on the Commission doing something and not on a Bell internal investigation.

A. Correct.

Q. You had essentially given up on Bell doing anything on its own in response to your letter to Mr. Wetzel.

A. Correct.

By plaintiff's own admission, then, Wetzel's representations did not induce her to undertake any substantial forbearance.

V. Wrongful Discharge

■ Count Five of plaintiff's complaint seeks to set forth a cause of action for wrongful discharge as follows:

39. The expressed public policy of the Commonwealth of Pennsylvania prohibits discharge from employment and discrimination in the term, conditions and privileges of employment on the basis of sex. Public policy further prohibits reprisals against any individual who has made a

charge of employment discrimination against her employer (Pennsylvania Human Relations Act, 43 P.S. Section 955(a) and (b)).

40. Defendants discriminated against plaintiff on the basis of her sex and terminated her employment in violation of public policy.

As a general matter, Pennsylvania common law does not recognize a cause of action for the termination of an at-will employment relationship. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Plaintiff contends that her claim may be heard under an exception that preserves such a cause of action where, as here, the discharge of the employee allegedly violates clear mandates of public policy. See *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir.1983); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978).

 Plaintiff's claim is not preserved by the public policy exception. Federal courts, applying Pennsylvania law, will recognize such an exception only where there is no available statutory means of vindicating the public policy in question. See *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221, 222 (3d Cir.1984); *Alexander v. Red Star Express Lines of Auburn, Inc.*, 646 F.Supp. 672, 678 (E.D.Pa.1986). Here, the state's commitment to eliminating workplace discrimination is clearly advanced by the PHRA, see, e.g., *Wolk, supra*, as is the state's interest in eliminating retaliatory discharge, see 43 P.S. Section 955(d).[10] Able to pursue her rights under statute, plaintiff may not appeal to the common law as an additional means of policy implementation. *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 917–19 (3d Cir.1982).

### CONCLUSION

To summarize the foregoing: (1) I conclude that plaintiff's claim of sexual discrimination under Title VII (Count I) will withstand the individual defendants' motion for partial summary judgment; (2) I will grant summary judgment on behalf of all defendants with regard to plaintiff's claims of retaliatory discharge (Count II), intentional infliction of emotional distress (Count III), and wrongful discharge (Count V); (3) I will also grant summary judgment in favor of defendants Bell and Wetzel with regard to plaintiff's claim of promissory estoppel (Count IV).

10. Paragraph 39 of plaintiff's complaint, *supra*, refers to some additional statutory provisions.