Cruz **LOPEZ**, Plaintiff-Appellant,

v.

**S.B. THOMAS, INC.,**
**Defendant-Appellee.**

**No. 1017, Docket 86–7920.**

United States Court of Appeals,
Second Circuit.

Argued April 8, 1987.

Decided Oct. 22, 1987.

---

Jose A. Rivera, Brooklyn, N.Y., for plaintiff-appellant.

Richard E. Donovan, New York City (Kelley Drye & Warren, Eugene T. D'Ablemont, Cynthia A. Epstein, New York City, of counsel), for defendant-appellee.

Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This case presents for our consideration whether unchecked ethnic epithets directed towards an employee may contribute to the employee's constructive discharge from his employment, and whether this type of harassment may also serve as the basis for a hostile work environment claim entitling plaintiff to relief in his civil rights suit against his employer. Although we recognize that an employer is unable to guaran-

tee a working environment uncontaminated by foul invective, the law nonetheless provides that when an employer knows or reasonably should know that co-workers are harassing an employee because of that individual's race, color, religion, sex, or national origin, the employer may not stand idly by. In our view, the allegations in the instant case are sufficient to avoid dismissal of the employee's constructive discharge claim.

Appellant Cruz Lopez, who is of Puerto Rican descent, filed his complaint against his former employer, S.B. Thomas, Inc. (Thomas), under 42 U.S.C. § 1981 (1982) and the Human Rights Law of the State of New York, N.Y.Exec.Law § 296 (McKinney 1982 & Supp.1987), alleging that his working environment was so discriminatory and hostile that he was forced to resign. The United States District Court for the Southern District of New York (Knapp, J.) granted the employer's motion for summary judgment under Fed.R.Civ.P. 56. We affirm as to the hostile work environment claim and reverse and remand on appellant's claim of constructive discharge.

## FACTS

Lopez, a New York resident, began working for Thomas, a New Jersey producer of baked goods, in 1973 as an assistant to the regional sales manager in the thrift division. After a series of promotions and transfers, appellant in 1978 rose to the position of District Sales Manager for fresh goods and served in this position for seven years without receiving any unsatisfactory performance reviews. On January 31, 1985 his supervisor, Thomas Elmore, gave him an overall rating of 3.7 out of an ideal 6, with "acceptable" scores in 6 of the 7 "competence areas." During this period, Lopez was the only minority District Sales Manager in Thomas's New York office.

In February, 1985 he was transferred to Thomas's Greensburgh, New York depot. The next month Donald Hunsberger, a white male, was appointed Regional Director of that facility, becoming plaintiff's direct supervisor. From this point Lopez's relationship with his employer deteriorated.

Almost immediately Hunsberger became upset with Lopez because of the manner in which he filed an expense account report, though Lopez claims that his filing was the customary one under his previous supervisor. A second incident occurred a month later when appellant failed to engage in selling while escorting Thomas' Vice President of Sales and the Division Manager to several customers in the region. Lopez and Hunsberger disagree as to what instructions the latter gave Lopez regarding these visits. After the Division Manager, Robert Forest, complained to Hunsberger that Cruz acted as a tour guide without giving a sales presentation, Hunsberger called Lopez aside and, according to Lopez, burst into degrading and lewd obscenities directed towards him.

A few weeks later Lopez went to Forest to complain about Hunsberger's outburst. According to appellant, Forest asked him what he was going to do about it, and when Lopez responded that he thought that by approaching Forest he was doing something about it, Forest suggested that Lopez resign. Afterwards, Forest filed an assessment of appellant, noting that while only a few weaknesses had been previously noted, Lopez was now "underqualified to perform" his job as District Sales Manager.

Hunsberger filed another review in June 1985. In this report Lopez received a score of only 2.1 out of 6 and his work was rated "below expectations" or "unacceptable" in 5 of the 7 areas of review. On June 19 Lopez met with Hunsberger to discuss the report. At the meeting, Hunsberger put him on a 90–day probationary period. Lopez claims that Hunsberger also told him that he would be fired at the end of the period regardless of his performance. Hunsberger denies this and states that he placed Lopez on a 90–day "developmental program," detailed in a June 20 memorandum to Lopez, designed to raise his performance "up to par." Hunsberger consulted with Forest before putting Lopez on this program. After the June 19 conversation with Hunsberger, Lopez sought other employment and quickly obtained a compa-

rable job at one of Thomas' competitors. He resigned on June 29, 1985.

In September 1985 the instant action was filed. Neither the complaint nor plaintiff's motion papers are models of clarity, but the district court understood Lopez's claim to be that defendant's actions "amounted to 'constructive discharge' by making the working environment so discriminatory and hostile that plaintiff had no choice but resignation." Plaintiff requested compensatory damages for emotional distress and attorney's fees. The district court granted defendant's motion for summary judgment on plaintiff's § 1981 cause of action on the ground that plaintiff failed to allege that "defendant had actual, or at least constructive, knowledge that the working environment was 'overrun by racial antagonism.'" (quoting *Snell v. Suffolk County,* 782 F.2d 1094, 1102 (2d Cir.1986)). The district court did not address the pendent New York claim, nor do we either in light of our conclusion that the case should be remanded in part.

## DISCUSSION

### I *Standard of Review*

Under Fed.R.Civ.P. 56(c) a trial judge shall grant summary judgment if the evidence offered demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the lack of a genuine issue of fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the record "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). On appeal, the same standard is applied by the reviewing court as that applied by the district court, *Burtnieks v. City of New York,* 716 F.2d 982, 985 (2d Cir.1983), and the grant of summary judgment will not be reversed based on arguments and facts that were not presented in the district court. *See River Plate*

*and Brazil Conferences v. Pressed Steel Car Co., Inc.,* 227 F.2d 60, 63 (2d Cir.1955); *Radix Organization, Inc. v. Mack Trucks, Inc.,* 602 F.2d 45, 48 (2d Cir.1979). We analyze plaintiff's claims with these precepts in mind.

### II *Plaintiff's § 1981 Claims*

Plaintiff contends that his complaint and motion papers demonstrate genuine issues of material fact warranting a trial on the merits of two § 1981 claims: constructive discriminatory discharge and a hostile work environment claim that may "stand alone as a ground for relief, as well as in support of his claim of constructive discharge." Thomas argues that the district court properly dismissed Lopez' abusive work environment claim and that Lopez did not raise the constructive discharge claim below; and, even had he raised it, Thomas asserts, it should be dismissed on appeal.

As noted, plaintiff's allegations are not set forth with crisp clarity, but instead have a somewhat indistinct and fuzzy drift. Yet, Lopez alleges in paragraph seven of his complaint that he "was constructively discharged on July 5, 1985." In paragraph two, he asserts that he "was discharged ... because of his race, color or national origin." In his Memorandum in Opposition to Defendant's Motion for Summary Judgment he states that "through hostile language, excessive criticism in day-to-day operations, performance reviews and the threat of termination after a 90–day development period, plaintiff could no longer tolerate the abuse of his supervisor and ultimately resigned." These allegations also appear in paragraph nine of the complaint. Accordingly, plaintiff sufficiently alleged a constructive discharge claim.

### A. *§ 1981 and Discriminatory Discharge*

§ 1981 provides that: "All persons within the jurisdiction of the United States shall have the same right in every State ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,...."

■ A plaintiff alleging that he was discharged in violation of § 1981 carries the initial burden of establishing a prima facie case of discrimination by showing that (1) he belongs to a protected minority; (2) he is qualified for the position; (3) he was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of racial discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, n. 6, 101 S.Ct. 1089, 1093–94 n. 6, 67 L.Ed.2d 207 (1981) (Title VII); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (Title VII); *Martin v. Citibank, N.A.,* 762 F.2d 212, 216–17 (2d Cir.1985) (*McDonnel Douglas* standard of liability applies equally to § 1981 actions); *Williams v. State Univ. of N.Y.,* 635 F.Supp. 1243, 1249 (E.D.N.Y.1986) (§ 1981 discriminatory discharge).

Upon making this showing, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer satisfies its burden, the plaintiff has an opportunity to show that the employer's stated reason is pretextual. *See id.* at 804, 93 S.Ct. at 1825. We begin by considering briefly the four elements of plaintiff's prima facie case.

### 1. *Membership in a Protected Minority*

■ Thomas alleges that the protections of § 1981 do not extend to persons claiming discrimination on the grounds of national origin. Since the argument of this appeal, the Supreme Court held in *Saint Francis College v. Al–Khazraji,* —— U.S. ——, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), "[b]ased on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* 107 S.Ct. at 2028. There can be no question that this includes persons like plaintiff who are of Puerto Rican descent.

### 2. *Qualified for Position*

■ The record indicates that Lopez adequately performed his job as District Sales Manager for seven years and received satisfactory reviews, salary increases, and some commendations. Hence, a genuine factual issue as to his qualifications for this position has been raised.

### 3. *Constructive Discharge*

■ In evaluating employment discrimination claims, we apply the concept of constructive discharge. *Martin,* 762 F.2d at 221 (§ 1981); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325–26 (2d Cir.1983) (Age Discrimination in Employment Act). When a constructive discharge is found, an employee's resignation is treated—for the purpose of establishing a prima facie case of employment discrimination—as if the employer had actually discharged the employee. *Pena,* 702 F.2d at 325.

"A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Id.* (quoting *Young v. Southwestern Sav. and Loan Ass'n,* 509 F.2d 140, 144 (5th Cir.1975)). To find that an employee's resignation amounted to a constructive discharge, "'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Id.* (quoting *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977)).

The record in this case amply demonstrates that Lopez has raised a genuine issue of fact as to whether he was constructively discharged when, as he alleges, Hunsberger told him he would be fired at the end of the 90–day probationary period no matter what he did to improve his allegedly deficient performance. A trier of fact might find that Hunsberger's statement alone suffices to establish a constructive discharge. *See Welch v. University of Tex. & Its Marine Science Inst.,* 659 F.2d 531, 533–34 (5th Cir.1981) (finding constructive discharge where employer clearly ex-

pressed his desire that employee resign because such a statement would force a reasonable person to resign).

### 4. *Inference of Discrimination*

The record also reveals circumstances surrounding plaintiff's termination of employment with Thomas from which a trier of fact could infer racial discrimination. Lopez was Thomas's only minority District Sales Manager in the New York office; in his deposition, Hunsberger stated that he did not think that there were any blacks or hispanics currently in that position. Lopez also alleges that he received a lower salary than a white District Sales Manager who had less seniority, and that Hunsberger was excessively critical of him because of his ethnic background.

 In its dismissal of Lopez's claims, the district court believed that appellant had not offered proof that Thomas had notice of Hunsberger's alleged discrimination. Yet, there was evidence that appellant brought the situation to Division Manager Forest's attention. There is no *per se* rule that makes employers automatically liable for the actions of co-employees that are directed towards a plaintiff; at the same time employers are not necessarily insulated from liability either. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). Instead, courts look to common law principles of agency for guidance. *Id.* Once an employer knows that a discriminatory environment exists, it has a statutory obligation to remedy it. Whether the employer is aware of employee harassment by co-workers and whether the employer has taken reasonable steps to eliminate such offensive conduct present questions of fact to be determined in each case. *See Snell v. Suffolk County*, 782 F.2d at 1104. Here there are enough facts alleged for a factfinder reasonably to conclude that Thomas through Forest knew of the racial epithets directed toward plaintiff by Hunsberger and also to believe, based on Forest's response, that no effort was made by the employer to terminate this sort of harassment.

Consequently, Lopez has adequately raised factual issues regarding the elements of his prima facie case of racial discrimination and has also presented evidence that may demonstrate that the legitimate reason Thomas offers for its treatment of him—inadequate performance—was pretextual. Summary judgment dismissing this § 1981 claim should not therefore have been entered against appellant. Instead, the case must be remanded for consideration of plaintiff's constructive discharge claim on the merits.

### B. *§ 1981 and Hostile Work Environment*

Turning now to appellant's hostile work environment claim, we recognized in *Snell* that "a working environment overrun by racial antagonism constitutes a Title VII violation." *Id.* at 1102; *see Meritor Sav. Bank*, 106 S.Ct. at 2405–06 (recognizing claim for hostile work environment based on sexual harassment under Title VII). The cause of action for a hostile working environment has also been recognized under § 1981. *See, e.g., Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250, 1253–54 (6th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

 While it is obviously a matter of degree, to demonstrate a hostile work environment more than an episodic pattern of racial antipathy must be proven to obtain statutory relief. A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive. *See Snell*, 782 F.2d at 1103.

 Because the claimed incidents in the instant case were few in number and occurred over a short period of time, they fail to allege a racially hostile working environment. *Compare Erebia*, 772 F.2d at 1256 (plaintiff subjected to racial slurs for five years) *and Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 (11th Cir.1982) (repeated, continuous and prolonged racially abusive language) *and Firefighters Inst. for Racial Equality v. City of St. Louis*, 549 F.2d

506, 514 (8th Cir.) (segregated eating arrangements in firehouses), *cert. denied,* 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977) *and E.E.O.C. v. Murphy Motor Freight Lines, Inc.,* 488 F.Supp. 381, 384 (D.Minn.1980) ("vicious, frequent, and reprehensible instances of racial harassment, which occurred in several guises") *with Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981) ("no steady barrage of opprobrious racial comment") *and Cariddi v. Kansas City Chiefs Football Club, Inc.,* 568 F.2d 87, 88 (8th Cir.1977) (per curiam) ("derogatory ethnic comments ... were part of casual conversation and did not rise to the level [of] ... a violation of Title VII."). The district judge properly dismissed Lopez's hostile work environment claim because the facts alleged simply do not demonstrate harassing incidents sufficiently continuous or concerted to be deemed pervasive.

### III. *Injury and Damages*

■ Finally, Lopez seeks recovery for emotional suffering, diminished sexual appetite, and less meaningful contact with his children. Thomas argues that Lopez's claim for emotional distress under § 1981 is barred by New York's Workers' Compensation Law. In *Martin v. Citibank, N.A.,* 762 F.2d 212 (2d Cir.1985), upon which the employer relies, we suggested that New York's Workers' Compensation Law might bar plaintiff's state common-law claim for intentional infliction of emotional distress. *Id.* at 220 n. 7. But, we do not read the workers' compensation law to deny relief under a federal statute. *See Madison v. Cinema I,* 115 Misc.2d 324, 326–27, 454 N.Y.S.2d 226 (N.Y.Civ.Ct.1982). Were state law to erect such a bar, it would clearly run afoul of the Supremacy Clause of the U.S. Const. Art. VI, cl. 2. *See Hamm v. City of Rock Hill,* 379 U.S. 306, 315, 85 S.Ct. 384, 391, 13 L.Ed.2d 300 (1964); *Kirkland v. New York State Dep't of Correctional Facilities,* 628 F.2d 796, 801 (2d Cir.1980), *cert. denied sub nom,* 450 U.S. 980, 101 S.Ct. 1515, 67 L.Ed.2d 815 (1981); *see also St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981) (courts should construe statutes to avoid raising doubts about their constitutionality).

In the alternative, Thomas claims that summary judgment was properly granted because plaintiff has offered insufficient proof of a compensable injury. Specifically, Thomas argues that Lopez's proof of emotional distress is insufficient as a matter of law and therefore that his complaint should be dismissed. We need not address the sufficiency of the proof, because even if Lopez cannot prove emotional harm upon remand, he may be entitled to nominal damages upon proof of a violation of a constitutional right. *See Erebia,* 772 F.2d at 1259 (§ 1981); *see also Smith v. Coughlin,* 748 F.2d 783, 789 (2d Cir.1984) (litigant entitled to nominal damages upon proof of violation of a substantive constitutional right under § 1983). Therefore, summary judgment dismissing plaintiff's complaint may not be granted on this ground.

### CONCLUSION

Accordingly, the district court's grant of summary judgment on appellant's hostile work environment claim is affirmed. The dismissal of Lopez's claim for constructive discharge is reversed and the case is remanded to the district court for further proceedings on the merits of that cause of action consistent with this opinion. The request for attorneys' fees made by appellee Thomas is denied.

Affirmed in part, reversed in part, and remanded.