**BURKA, et al., Plaintiffs,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, et al.,
Defendants.**

**No. 85 Civ. 5751 (RPP).**

United States District Court,
S.D. New York.

Jan. 22, 1990.

Margaret K. Brooks, Ellen M. Weber, and Edward J. Davis, Legal Action Center of City of New York, Inc., New York City, for plaintiffs.

Albert C. Cosenza, Gen. Counsel, Eugene Friedus, and Deborah E. Collins, New York City Transit Authority, Brooklyn, N.Y., for defendants.

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs and defendants move for an order pursuant to Federal Rule of Civil Procedure 23(e) approving a proposed partial settlement, presented to the Court on October 27, 1989 and entitled "ORDER ON CONSENT."

### Background

On July 26, 1985, plaintiffs commenced this class action challenge to the marijuana testing procedures of the New York City Transit Authority (TA). *See Burka v. New York City Transit Authority*, 110 F.R.D. 595 (S.D.N.Y.1986) and 121 F.R.D. 215 (S.D.N.Y.1988). Plaintiffs are those persons who were either employed by the TA or applied for jobs with the TA and had some action taken against them because of a positive result for marijuana use as a result of a urine test. The complaint alleged violations of federal and state law and sought monetary and equitable relief.

On February 1, 1988, Judge Goettel granted summary judgment dismissing all causes of action except those based upon theories of due process, privacy rights or unreasonable search and seizure, under either the United States or New York State Constitutions. *See Burka v. New York City Transit Authority*, 680 F.Supp. 590 (S.D.N.Y.1988). In addition, there are outstanding pendent state law claims. A nonjury trial on these issues took place from April 14, 1989 through May 24, 1989. Proposed findings of fact and conclusions of law were submitted on September 15, 1989 and the Court has not yet issued its decision.

On October 27, 1989, the parties submitted a partial settlement agreement to

the Court. The settlement affects only the subclass of plaintiffs tested in January, 1984 through September, 1984 by the Laboratory for Chromatography (LFC). Both parties concede that there was no "evidence at trial concerning the accuracy of the testing performed by the Laboratory for Chromatography." *See* Stipulation Letter of December 4, 1989. Thus,

> [t]he settlement will resolve only the due process claims pertaining to the accuracy of the urine testing performed by the Laboratory for Chromatography. The other claims of the plaintiffs who were tested by the Laboratory for Chromatography (such as their claims of unreasonable search and seizure and due process violations due to lack of notice of testing) also remain.

*Id.* (footnote omitted).

Essentially, the settlement provides for expungement of the LFC marijuana use finding from all TA records, eligibility of terminated subclass members for reinstatement, eligibility of non-appointed subclass members for promotion or transfer, eligibility of rejected applicant subclass members for hiring, restoration of benefits, compensation, and arbitration of disputes pertaining to the implementation of the settlement's provisions. Furthermore, the TA consents to refrain from future retaliation against subclass members and to pay the subclass' attorneys' fees.

The Court initially reviewed the settlement document early in October, 1989 and requested that the parties make several changes to clarify the language. After these changes were made, a notice describing the affected subclass and the terms of the agreement was printed for three days a week for three weeks in four local daily newspapers and each week for three weeks in *The Amsterdam News* and *The Chief.*

In addition, all individuals identified by the parties as members of the subclass were to receive a similar notice by first class mail at the most recent addresses contained in the TA's personnel files.

The notice also informed the subclass that comments on and objections to the settlement could be sent to attorneys for the subclass or could be voiced at a hearing before the Court on December 4, 1989. Four principal objections were raised to the settlement at the hearing. Subsequently, both parties informed the Court on December 14, 1989 that they had consented to amend the agreement to address two of the objections. *See* Plaintiffs' Letter of Dec. 14, 1989 to the Court [hereinafter Amendment Letter]; Defendant's Letter of Dec. 14, 1989 to the Court. This motion requires the Court to decide whether to approve the proposed settlement and amendments. In addition, the Court must consider the impact of the two unresolved objections on the adequacy of the settlement.[1]

### Discussion

Rule 23(e) permits compromise of a class action only by approval of the court after notice to the class. The Second Circuit in *Malchman v. Davis*, 706 F.2d 426 (2d Cir. 1983), and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974), set forth the standards that a district court must apply before approving a settlement or consent decree in a class action. *See Wilder v. Bernstein*, 645 F.Supp. 1292, 1308 (S.D.N.Y.1986) ("court presented with proposed consent decree faces a similar task to that of the court evaluating a class action settlement, namely, to ascertain that the settlement is 'fair, adequate and reasonable.'") (quoting *United States v. City of Miami*, 664 F.2d 435 (5th Cir.1981) (en banc) (Rubin, J., concurring in *per curiam* opinion)), aff'd, 848 F.2d 1338 (2d Cir.1988).[2]

1. The Court also had both parties attend a conference on January 12, 1990, to clarify whether the provisions for "employees" cover probationary employees. As a result of that conference, the parties mailed a Stipulation Letter, dated January 16, 1990, to the Court. The Stipulation explains that the parties consent to probationary employees being included in the term "employee" throughout the Order on Consent. The Stipulation further provides for amendments to

paragraph 1 and the Attachment B (the notice of settlement) to clarify the status of probationary employees in the agreement. The Court approves those proposed amendments as in accordance with the standards elaborated *infra.*

2. The parties refer to the agreement as both a proposed consent order and as a settlement. When the plaintiff is not a class, then court approval is usually only necessary for a consent

The district court must weigh "the substantive terms of the settlement compared to the likely result of a trial" and consider "the negotiating process, examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman,* 706 F.2d at 433. Particular factors which may be relevant are: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F.2d at 463 (citations omitted).

## A. General Provisions and Compensation

The agreement, as submitted to the Court on October 27, 1989 provides for a fair and reasonable resolution of those issues which it addresses. The subclass' interests were studied and advocated by a competent team of attorneys for a period of four years and three months before the proposed settlement was reached. Determination of whether the LFC tests satisfy due process standards would depend on extensive and complex fact finding and be subject to legal standards which are largely undefined by current caselaw. The decision to avoid the costly and unpredictable results of a trial on the issue of the accuracy of the tests under the due process clause appears to have been a wise one.

Furthermore, the provisions of the settlement are favorable to the subclass. Basically, the settlement requires the TA to place, to the extent of its authority, members of the subclass in as good a position as they would have been in but for their positive results on LFC tests for marijuana use. The main compromise is in the realm of compensation. All terminated workers are to receive $25,000 and suspended employees are to receive lost wages of no more than $5,000. The response of the subclass to the $25,000 compensation figure was positive and the Court agrees that it is a significant amount of money.

However, at the hearing there was discontent voiced concerning the $5,000 limit on the compensation for each subclass "member suspended in connection with a pre-promotion or job transfer examination." ORDER ON CONSENT ¶ 36. Plaintiffs' attorneys have explained that the decision to accept that compromise was the result of careful consideration of: (a) the risks of losing at trial or on appeal on the merits, (b) the delay of a trial and appeal, and (c) the risk that the trial or appellate courts would hold that those members denied promotion have no right to any back pay because of the recent New York Court of Appeals holding that a TA employee wrongfully denied promotion has no right even to be certified for promotion prospectively. *Deas v. Levitt,* 73 N.Y.2d 525, 541 N.Y.S.2d 958, 539 N.E.2d 1086 (once Department of Personnel promotion eligibility list expires, those on that list lose all rights to promotion), cert. denied, —— U.S. ——, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). Although the settlement does not provide for full back pay for those denied promotion, the opportunity to receive up to $5,000 is meaningful and reasonable in light of the considerations before plaintiffs' attorneys.[3] Accordingly the provision is approved.

order. Since this is a class action, court approval is necessary under Rule 23(e) and there is little or no difference whether the agreement is technically considered to be a consent order or a settlement. *See Wilder,* 645 F.Supp. at 1308.

**3.** In the Amendment Letter, plaintiffs' attorneys ask that the Court "urge" the TA, "for the sake of

equity, [to] agree to raise the compensation provided to rejected applicants for promotions to a flat amount of $5,000." Since the best possible outcome of a trial would not entitle those members whose lost wages do not reach the $5,000 plateau to a minimum of $5,000 back pay, there

## B. Proposed Amendments

■ A second objection to the agreement pertains to its failure to provide that reinstated employees will be deemed to meet "time in service" requirements for scheduled, competitive examinations, for which they would have been eligible but for the "time in service" missed as a result of their termination. Apparently the issue was not addressed because a non-party, the New York City Department of Personnel, has absolute control over eligibility for those examinations. In light of the TA's lack of authority to consent to a concession on this issue, both parties have agreed to amend the settlement to include a paragraph requiring the TA

> to request permission from the New York City Department of Personnel for Terminated LFC Subclass members who are offered and accept reinstatement to be deemed to meet 'time in service' requirements, if any, to take otherwise scheduled competitive examinations for which they would have been eligible but for their terminations....

Amendment Letter at 1 (proposed paragraph 23); Defendant's Letter of Dec. 14, 1989 to the Court. This amendment is approved as redrafted in the Amendment Letter, since the Court has no jurisdiction over the New York City Department of Personnel in this matter.

A third objection is the absence of a provision for those subclass members entitled to reinstatement or appointment to job titles that no longer exist. Both parties have subsequently consented to amend the agreement so that such subclass members will be offered

> the first available opening in the existing title for which he or she is otherwise qualified, the functions and duties of which come closest to those of the eliminated title, at a salary level not less than that of the eliminated title.

Amendment Letter at 2 (proposed paragraphs 44 and 45). Arbitration procedures also are to be provided in conjunction with the implementation of this amendment. *See id.* at 2–3 (proposed modifications of

original paragraphs 48 and 52); Defendant's Letter of Dec. 14, 1989 to the Court. With these safeguards, this amendment is a reasonable means of meeting the objection raised.

In summary, the amendments in response to the second and third objections are adequate and fair resolutions of those issues and the Court approves the settlement with the incorporation of the proposed paragraphs 23, 44 and 45 and the proposed modifications to the original paragraphs 48 and 52.

## C. Constructive Discharge

■ The fourth objection presents the only area of concern which has not been resolved by the parties. Several plaintiffs who had been tested positive by LFC for marijuana use appeared at the hearing to inquire whether they would be included in the term "terminated employees," even though they stated they were not terminated formally. Those employees contended that they were pressured to resign after the LFC test result and therefore were constructively terminated. The parties disagree over whether there are "constructively discharged" TA employees entitled to take advantage of the settlement agreement.

■ Second Circuit caselaw establishes that a constructive termination is equivalent to a formal termination. *See Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 59 (2d Cir.1987); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1186 (2d Cir.1987); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983); *Bausch & Lomb Optical Co. v. NLRB*, 217 F.2d 575, 577 (2d Cir.1954). This Court has a duty to assure that the settlement terms are consistent with the law. *See Wilder*, 645 F.Supp. at 1308 (citing *Robertson v. National Basketball Association*, 556 F.2d 682, 686 (2d Cir.1977) and *City of Miami*, 664 F.2d at 441). If there are persons who were constructively discharged as a matter of law and fact, then they are entitled to be

is no compelling reason to make such a recommendation.

covered by the settlement's provisions for "terminated" employees.

Under both New York State and Second Circuit caselaw,

'A constructive discharge occurs when the employer, rather than acting directly, "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." ' To find that an employee's resignation amounted to a constructive discharge, ' "the trier of fact must be satisfied that the ... working conditions would have been so difficult that a reasonable person in the employee's shoes would have felt compelled to resign." '

*Lopez v. S.B. Thomas, Inc.*, 831 F.2d at 1188 (citations omitted). *See also Ioele v. Alden Press, Inc.*, 145 A.D.2d 29, 536 N.Y. S.2d 1000, 1004 (1st Dept 1989) (same). Although the definition's terminology was developed in the context of harassment cases, the same test has been utilized when a threat of termination forces an employee to resign. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d at 1188–89. In such an instance, the employer's intimidating statements constitute the "working conditions" which induce the involuntary resignation. *Id.*

The Court agrees with defendant that a constructively terminated employee can only benefit from the settlement if the "intolerable working conditions," such as an employer threat, resulted from the detection of marijuana use by the LFC from January, 1984 through September, 1984. *See* ORDER ON CONSENT ¶ 44(2). Moreover, whether employees were constructively terminated depends upon the specific facts of each resignation.

Defendant argues that a holding ordering the inclusion of constructively discharged employees in the ORDER ON CONSENT is not proper because no members of the plaintiff class could have been constructively terminated. That contention is founded upon defendant's claims that (a) pre-termination hearings were available for individual challenges to LFC test results and (b) the maximum penalty in most instances for marijuana use in 1984 was suspension and participation in an assistance program. Plaintiffs do not concede these claims. Accordingly, findings of fact and conclusions of law must be made to resolve this issue because it leaves " 'the propriety of the settlement ... seriously in dispute.' " *See Wilder*, 645 F.Supp. at 1307 (quoting *Malchman*, 706 F.2d at 433).

■ As a matter of law, the first contention is insufficient to support a ruling that the TA did not constructively terminate any employees tested by the LFC from January, 1984 through June, 1984. An employee's decision not to seek redress in a pretermination hearing is only one factor to be considered in a determination of whether the employee voluntarily resigned or was forced into resignation. *See Levendos v. Stern Entertainment*, 723 F.Supp. 1104 (W.D.Pa.1989) (constructive termination does not occur when plaintiff "voluntarily chose to resign ... rather than seeking opportunity for Stern [the employer] to clarify or verify or dispel and disavow allegations or suspicions"); *cf. Meritor Savings Bank v. Vinson*, 477 U.S. 57, 78, 106 S.Ct. 2399, 2411, 91 L.Ed.2d 49 (1986) (Marshall, J., concurring) ("Where a complainant without good reason bypassed an internal complaint procedure she knew to be effective, a court may be reluctant to find constructive termination"). The availability of a hearing does not preclude a finding that the employer's statements or acts placed the employee in a situation in which a reasonable person did not act voluntarily when resigning. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d at 1188–89 (citing *Welch v. University of Texas and Its Marine Science Institute*, 659 F.2d 531, 533–34 (5th Cir.1981)).

Plaintiffs contend that defendant's second argument, that the maximum penalty for a positive test result was suspension in most cases, is a false statement of fact. Even if defendant is correct, constructive discharges still may have occurred based upon the statements made to TA employees by TA supervisory personnel. *Id.* Neither of defendant's objections are sufficient grounds for ruling out the possibility that constructive discharges took place.

Accordingly, the Court rules that those constructively terminated are to be included within the term "terminated." The Court further orders that the notice to the parties of the ORDER ON CONSENT, *see* ORDER ON CONSENT ¶ 65 and Attachment B, be amended so as to notify the class of the inclusion in the settlement of those constructively discharged due to the positive results for marijuana use as a result of an LFC test performed from January, 1984 through September, 1984. In addition, the Court orders that arbitration procedures, provided for in ORDER ON CONSENT ¶¶ 44–54, be utilized to determine whether former employees, who raise the issue within thirty days of the publication of the aforementioned notice, were constructively terminated.

Defendant also argues that employees on probation could not have been constructively discharged because they could have been dismissed for any reason at all at the end of the probation period. Although this lack of an entitlement to job security results in an absence of due process interests for probationary employees,[4] it does not render a constructive discharge impossible. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d at 1188 (finding of constructive discharge based upon employer's statement to employee that "he would be fired at the end of the 90–day probationary period no matter what he did to improve his allegedly deficient performance").

▪ Moreover, a due process interest is not a prerequisite to inclusion in the settlement, even though this is a settlement of a due process claim. The relief provided by a consent decree may properly be broader than what a court could have awarded after trial. *Local Number 93 v. City of Cleveland*, 478 U.S. 501, 525, 106 S.Ct. 3063, 3076–77, 92 L.Ed.2d 405 (1986). Indeed, Judge Goettel ruled a year ago that the applicants who tested positive have no due process rights, 680 F.Supp. at 610, but

they are included in this settlement of due process claims. Furthermore, defendant agrees that formally terminated probationary employees are properly part of the settlement. *See supra* note 1. A consent decree is valid as long as the agreement resolves a dispute within the court's subject matter jurisdiction, "comes within the general scope" of the case and furthers objectives of the law. *Id.* (citations omitted). Inclusion of probationary employees as potential victims of constructive discharge is consistent with the standards for approval of a consent decree and it would be improper to exclude constructively discharged probationary employees from the subclass.

### Conclusion

The Court approves the agreement entitled ORDER ON CONSENT and its amendments, *see* discussions *supra* of proposed paragraphs 23, 44, 45 and proposed modifications to Attachment B and paragraphs 1, 48 and 52, as consistent with the standards stemming from both Federal Rule of Civil Procedure 23(e) and caselaw reviewing consent decrees and settlements in general.

Furthermore, the Court orders that: (a) terminated and constructively terminated employees are to be treated equivalently; (b) notice is to be provided to the class informing it that constructively terminated employees are included in the ORDER ON CONSENT and that all those subclass members claiming that they were constructively discharged must raise the issue within thirty days of the last date of publication of the notice; and (c) the arbitration provisions provide a forum for determination of whether employees were constructively terminated, as defined above, and whether the constructive termination resulted from the ramifications of a positive result for marijuana use as a result of an LFC test performed from January 1984 through September 1984.

---

**4.** The basis for defendant's contention that the probationary employees lack due process interests is the reasoning of Judge Goettel in *Burka*, 680 F.Supp. at 610. The Court has no doubt that that reasoning based upon *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), is correct; however, it should be noted that the decision of Judge Goettel dismissed only the claims of the applicants and left the due process claims of the probationary employees viable.

The final agreement containing the amendments is to be submitted to the Court for approval within *5* days of the filing of this Opinion and Order.

SO ORDERED.