Jeff J. WHITE, individually and on behalf of all those similarly situated, Plaintiffs,

v.

Andrew J. MELTON, Jr., Charles A. Fiumefreddo, Sheldon Curtis, Arthur D. Forster, Kenton J. Hinchliffe, Bruce N. Alpert, Dean Witter Government Securities Plus, Dean Witter Reynolds, Inc. and Dean Witter Financial Services, Inc., Defendants.

90 Civ. 0498 (SWK).

United States District Court, S.D. New York.

Feb. 11, 1991.

Berger & Montague, Philadelphia, Pa. by Stephen D. Ramos, for plaintiffs.

Paul Weiss Rifkind Wharton & Garrison, New York City (Lewis A. Kaplan, Richard A. Rosen, Steven L. Vollins, of counsel), for defendants other than Dean Witter Government Securities Plus.

Gordon Hurwitz Butowsky Weitzen Shalov & Wein, New York City (David M. Butowsky, Victor J. Rocco, Michael B. Reuben, Ronald B. McGuire, of counsel), for defendant Dean Witter Government Securities Plus.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This securities fraud case requires the Court's construction of a relatively recent change in the disclosure requirements of the Securities and Exchange Commission ("the SEC" or "the Commission") under Regulation C of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ("the '33 Act"), relating to open-end diversified management investment companies, or mutual funds. Presently before the Court is defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6), or, alternatively, for summary judgment pursuant to Rule 56, Fed.R.Civ.P.[1] Plaintiff opposes the motion.

---

**1.** Defendants also move for dismissal for failure to comply with the applicable statute of limita-

tions, failure to plead *scienter,* and failure to plead fraud with specificity pursuant to Fed.R.

## BACKGROUND [2]

In 1982 the SEC determined that the disclosures it required in mutual fund prospectuses had become "too long and complex." 48 Fed.Reg. 37928, 37929 (Aug. 22, 1983). The Commission accordingly revised the regulations and adopted a new form for registering mutual funds, simplifying the prospectus that each investor would receive. *Id.;* Rules 495, 495, and 497, 17 C.F.R. § 230 (1989). In addition, the new regulations required that the registrants make available to investors, upon request and without charge, a Statement of Additional Information ("SAI") in order to provide more extensive information to those who desire it. *Id.*

However, the SEC recognized the possible concern on the part of some mutual funds that "omitting information from the simplified prospectus could expose them to liability" under the fraud provisions of the '33 Act.[3] *Id.* at 37930. The SEC therefore sought comment as to whether this concern was legitimate and, if so, how it could be resolved consistent with the Commission's desire to streamline the prospectuses. After receiving comments, the Commission decided to permit registrants to incorporate the SAI into the prospectus by reference. The Commission stated that:

> if a mutual fund incorporates the Statement of Additional Information by reference, the Statement would be a part of the prospectus as a matter of law.

*Id.* The new Registration Form N–1A includes three parts: Part A is the simplified prospectus; Part B is the Statement of Additional Information; and Part C relates to other information required by the registration statement.[4] 17 C.F.R. § 230.495(a) (1989).

In this putative class action, an investor complains that a critical piece of information was wrongfully omitted from the February 3, 1987 Prospectus and Registration Statement (the "Prospectus") of defendant Dean Witter Government Securities Plus Fund ("Plus Fund"). However, plaintiff concedes that the information was contained in the SAI, which was incorporated by reference on the cover of the Prospectus. Defendants' Local Rule 3(g) statement, ¶ 4 (uncontested); Plus Fund Prospectus, dated February 3, 1987, attached as Exhibit A to Affidavit of Marilyn K. Cranney, Esq. (hereinafter "Cranney Aff.") at 1 (noting that additional information about the fund is contained in the Statement of Additional Information, which is available at no charge upon request and which is incorporated by reference into the Prospectus); Plus Fund Statement of Additional Information, dated February 3, 1987, attached as Exhibit B to Cranney Aff.

The Plus Fund is a mutual fund that invests principally in U.S. government securities. The individual defendants were officers of the Plus Fund at the time of the initial offering. Defendant Dean Witter Reynolds, Inc. is the Plus Fund's investment manager, underwriter and distributor. Defendant Dean Witter Financial Services, Inc. is a financial services company that owns the shares of Dean Witter Reynolds, Inc.

When shareholders buy Plus Fund shares, they pay no commission or "sales load" at the time of purchase. Instead, the charge is imposed at the time shares are redeemed. The longer the investor retains the shares, the lesser the charge. For example, if the shareholder redeems his shares in the first year of purchase, he pays a 5% commission; if he redeems in the

---

Civ.P. 9(b). Because the Court disposes of the matter on other grounds, it does not reach these issues.

**2.** This background information is drawn from those facts set forth in defendants' Local Rule 3(g) statement which are uncontested by plaintiff. Disputed facts are construed in favor of the non-moving party, which in this case is the plaintiff.

**3.** At the same time, the Commission sought to assuage this concern by observing that no provision of that Act "imposing any liability ... appl[ies] to any act done or omitted in good faith in conformity with any rule of the Commission." *Id.* (citing Section 19(a) of the '33 Act).

**4.** The information contained in Part C is not relevant to this suit.

second year, he pays a 4% commission; the commission similarly declines to 0% after the sixth year. This method of calculating commissions is known as a Contingent Deferred Sales Charge, or "CDSC." The purpose of the CDSC is to encourage investors into longer-term holdings.

The Plus Fund also grants an "Exchange Privilege," *i.e.*, shareholders may transfer their holdings into other money market funds with different investment goals, some of which may carry no sales commission at all. However, if an investor shifts his money from the Plus Fund program into a money market fund without commission charges, and then switches his money back into the Plus Fund, the time spent in the other fund would not count towards the reduction of the CDSC commission. This rule, known as the "freeze" rule, is at the center of the present dispute. The freeze rule does not appear in the defendants' February 3, 1987 Prospectus which was provided to plaintiff; instead, it is noted in the SAI.[5] Subsequent Plus Fund registration statements did include the freeze rule in the Prospectus itself.

Plaintiff asserts liability under §§ 10(b), 11, 12(2) and 20 of the '33 Act and SEC Rule 10b–5 promulgated thereunder. He does not specify in the Complaint how much he lost as a result of the alleged non-disclosure.[6]

## DISCUSSION

### I. Standards for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

---

**5.** The Prospectus states:

> When exchanging into a money market fund, shares of the Fund are redeemed out of the Fund at their next calculated net asset value and exchanged for shares of the money market fund at their net asset value determined the following day.
>
>     \*    \*    \*    \*    \*    \*
>
> No contingent deferred sales charge is imposed at the time of nay exchange, although ultimately a contingent deferred sales charge may be imposed upon redemption (see 'Redemptions and Repurchases—Contingent Deferred Sales Charge').

Complaint ¶ 17; Prospectus 15.

The SAI further explains:

> During the period of time the shareholder remains in the money market fund, the investment period or 'year since purchase payment made' is frozen. When shares are redeemed out of a money market fund, they will be subject to a contingent deferred sales charge which would be based upon the period of time the shareholder actually held the shares in a contingent deferred sales charge fund. Shareholders acquiring shares of a money market fund pursuant to this exchange privilege may exchange those shares back into a contingent deferred sales charge fund from the money market fund, with no charge being imposed on such an exchange. The investment period previously frozen when shares were first exchanged for shares of a money market fund resumes on the date shares of a contingent deferred sales charge fund are reacquired. Thus a contingent deferred sales charge is imposed only upon an ultimate redemption based upon the time the shareholder was invested in a contingent deferred sales charge fund.

SAI, attached as Exhibit B to Cranney Aff., at 28.

**6.** Plaintiff apparently had invested $1 million in the Plus Fund over time, and at some point exercised the Exchange Privilege on the total amount; accordingly, he stood to lose approximately one percent of the sales load per year spent outside of the Plus Fund prior to the sixth year, assuming he then redeemed before the load declined to 0%. The record does not disclose how much such time elapsed in this case. Complaint at ¶ 5; Tr. at 15–16.

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[7] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

## II. Court's Consideration of the SAI.

■ Plaintiff urges the Court not to consider the SAI but to look solely to the Prospectus in determining whether the Complaint survives the instant motion. Defendants respond that because the SAI was incorporated into the Prospectus by reference, the freeze rule effectively "appeared" in the Prospectus. They accordingly ask the Court to consider that the SAI, as well as the Prospectus, is before it for purposes of this motion.

The Court considers that the SAI is in fact before it, both because the SAI was incorporated by reference into the Prospectus, which itself is referred to in plaintiff's Complaint (¶¶ 17, 18, 19), and also because defendants included it among their moving papers for summary judgment, annexed as Exhibit B to the Cranney Affidavit. Fed.R. Civ.P. 56(c); *see Feinman v. Schulman*

*Berlin & Davis*, 677 F.Supp. 168, 170 n. 3 (S.D.N.Y.1988). The SEC expressly provided that SAIs incorporated by reference are deemed "a part of the prospectus as a matter of law." 48 Fed.Reg. at 37930. Plaintiffs may not selectively quote from the Prospectus and then argue that the Court should not consider it in its entirety, including referenced portions such as the SAI, in order to avoid summary judgment. The SAI is an integral part of the evidence in this case and is properly before the Court on this motion for summary judgment.

## III. Placement of the "Freeze" Rule

The substantive question before the Court is whether, as a matter of law, the information about the freezing of the CDSC calculation had to appear in the Prospectus itself, or whether it was permissible for it to appear in the SAI, as incorporated into the Prospectus by reference.

The SEC envisaged that new prospectuses called for by Part A of Form N–1A,

> standing alone, will meet the standard of section 10(a) of the 1933 Act. That is, the simplified prospectus will contain the information that is 'necessary or appropriate in the public interest or for the protection of investors.'

48 Fed.Reg. at 37930 (quoting § 10(a) of the '33 Act).[8] At the same time, it advised registrants completing Part A of Form N–1A, the Prospectus, that:

> [e]xtensive use of technical or legal terminology or complex language and the inclusion of excessive detail may make the prospectus difficult for many investors to understand and may, therefore

---

**7.** The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

**8.** Section 10(a)(4) of the '33 Act provides that information may be "omitted" from a prospectus if the SEC adopts rules and regulations that so provide. 15 U.S.C. § 77j(a)(4) (1987); *see also* 48 Fed.Reg. at 37929 (simplified prospectus "meets the requirements of Section 10(a) under the 1933 Act, and thereofre, can be used to satisfy the Prospectus delivery requirements of Section 5(b)(2)").

detract from its usefulness. Accordingly, * * * responses to [the items in Part A], particularly those that call for a brief description, should be as simple and direct as reasonably possible and should include only as much information as is necessary to an understanding of the fundamental characteristics of the Registrant.

\* \* \* \* \* \*

*Id.* at 37942–43.

With respect to information about redemption or repurchase of shares, the form instructs:

> Item 8. Redemption or Repurchase
>
> (a) Describe briefly in the prospectus all procedures for redeeming the Registrant's shares, any restrictions thereon, and any charges that may be attendant upon redemption. . . .

48 Fed.Reg. at 37946. SEC Guideline 27 further elaborates on what type of information should be included in the prospectus regarding redemption or repurchase:

> Item 8 requires the registrant to include in the prospectus a brief description of the procedures for redeeming shares or having shares repurchased by the registrant. Any charges or restrictions applying to such procedures imposed by the distributor or principal underwriter must be disclosed in the prospectus.

*Id.* at 37964.

Based on these provisions, plaintiff argues that the freeze rule should have appeared in the Prospectus itself, because it is one of the "conditions and restrictions affecting" charges that apply to procedures for redeeming shares. Plaintiff's Memorandum of Law at 10.

In response, defendants invoke, *inter alia,* the SEC's goals in promulgating the new Form N–1A, permitting investment firms to put information in the SAI of less interest to the general investing public. In particular, they point to the instruction that information regarding "extraordinary methods of redemption" may be furnished

in Part B.[9] Defendants' Memorandum of Law in Support of Motion to Dismiss (hereinafter Def.Mem. I), at 14 (citing 48 Fed. Reg. at 37934).

■■■ The Court must dismiss a complaint founded on allegations of securities fraud if the allegedly omitted or misrepresented information was in fact appropriately disclosed. *See Feinman, supra,* 677 F.Supp. at 170; *see also Wielgos v. Commonwealth Edison Co.,* 688 F.Supp. 331, 336–340 (N.D.Ill.1988), *aff'd,* 892 F.2d 509 (7th Cir.1989) (defendants not liable under Section 11 where registration statement's incorporated documents disclosed the alleged omissions). Upon consideration of the record, the parties' submissions and oral arguments, the Court concludes as a matter of law that plaintiff cannot state a claim for fraud under the securities laws based on defendants' placement of the freeze rule in the SAI, as incorporated by reference into the Prospectus, rather than in the Prospectus itself.

Item 7(c) of the Instructions accompanying Part A of Form N–1A provides:

> If there are any special purchase plans or methods (e.g., letters of intent, *exchange privileges,* services in connection with retirement plans), list them and state from whom additional information may be obtained.

48 Fed.Reg. at 37946 (emphasis added). Form N–1A states that when a registrant is only required to "list" a particular item in Part A the response need include a "minimum of explanation." 48 Fed.Reg. at 37943.

Item 19(a) then directs that registrants provide in the SAI, Part B,

> . . . a description of the manner in which registrant's securities are offered to the public. The description should include any special purchase plans or methods not described in the plans or methods not described in the prospectus, such as letters of intent, accumulation plans, with-

**9.** Defendants also note that even if they violated an SEC rule providing for the placement of the information in the Prospectus rather than the SAI, there is no private right of action under the securities laws for "record-keeping or other technical violations of the securities laws." *See* n. 3, *ante.*

drawal plans, *exchange privileges* and services in connection with retirement plans.

*Id.* at 37950 (emphasis added). Defendants complied with these instructions by indicating in the Prospectus the existence of the exchange privilege (Prospectus 15), noting the availability in the SAI of further information from the distributor (Prospectus 16), and offering a detailed explanation of the privilege, including the freeze rule, in the SAI (SAI 28).

Plaintiff focuses the Court's attention on the rules for disclosure of terms relating to redemption and repurchase. Registration Form N–1A directs that information regarding "restrictions" and "charges" attendant upon redemption of shares must be placed in the Prospectus itself. Item 8, *supra;* Guideline 27, *supra.* Although plaintiff does not even try to show that the freeze rule was such a "restriction" or "charge," he mysteriously attempts to demonstrate that it should have been included in the Prospectus nonetheless. He asserts, without citation, that registrants must disclose in the Prospectus the "charges imposed on investors in mutual funds, as well as the conditions and restrictions affecting those charges." [10] Pl. Mem. at 10. Plaintiff then reasons that "the utilization of the Exchange Privilege is a *procedure that affects the charges* imposed on investors when Fund shares are ultimately redeemed." *Id.* (emphasis added). He concludes that "the freezing of the CDSC investment period as a result of the exchange is a restriction that was required to be disclosed in the Part A Prospectus rather than the Part B SAI.

■ Plaintiff confuses his terminology when he equates a "procedure that affects the charges" on shareholders when they switch out of the fund with "charges or restrictions applying to such procedures"

themselves. The freeze rule is neither a charge nor a restriction; it is a failure to decrease a charge. Defendants rightly point out that the distinction between charging a fee and abstaining from decreasing the sales load is highlighted by the example of a shareholder who switches his money out of the Plus Fund after the sixth year, then returns to the Plus Fund later. When the shareholder ultimately redeems his shares, he does not pay any commission at all. Tr. 8.[11] Therefore, the CDSC cannot properly be considered a "charge" for purposes of Item 8 and Guideline 27.

■ Moreover, placement of the freeze rule in the SAI is consistent with the Commission's goals in promulgating the new Form N–1A. It is of interest only to that limited class of investors who would wish to switch their money out of the Plus Fund, switch it back in again, and redeem their shares, all before the seventh year of their investment.[12] In light of the Form's instruction that "responses [to Part A] ... should be as simple and direct as reasonably possible," the Court has no trouble holding as a matter of law that the freeze rule is not a "fundamental characteristic[ ] of the Registrant," but rather the sort of "excessive detail" that the Commission sought to relegate to the SAI. 48 Fed.Reg. at 37942–43.

The Court therefore finds no genuine issue of material fact precluding the conclusion that defendants duly complied with the requirements of the SEC as set forth in Registration Form N–1A and 48 Fed.Reg. 37928 *et seq.* Plaintiff cannot state a claim under SEC Rule 10b–5 or §§ 11 or 12 of the Securities Act of 1933. Accordingly, the Court will grant defendants' motion for summary judgment and dismiss the Complaint.

**10.** The Court notes that this is a somewhat inaccurate paraphrase of Guideline 27.

**11.** Defendants further argue that Item 8 and Guideline 27 apply to sales charges, not redemption charges. *Id.; see also* Def.Mem. II at 10 & n. 8.

**12.** It is unclear from the record what percentage of Plus Fund shareholders is affected by the

"freeze rule." Defendants counsel estimated that it was a "very narrow group of people," and plaintiff's counsel was unable to supply any approximation at all, deferring instead to defendants' greater access to such information. Transcript of Oral Argument, dated August 2, 1990, at 3, 15.

## CONCLUSION

For the reasons stated above, the Court GRANTS defendants' motion for summary judgment. The Complaint is dismissed.

The Judgment Clerk shall enter judgment forthwith.

SO ORDERED.