UNITED STATES of America, Plaintiff,

v.

Kenneth PEIRCE, et al., Defendants.

ALUMINUM COMPANY OF AMERICA, et al., Third–Party Plaintiffs,

v.

BETHLEHEM STEEL, et al., Third–Party Defendants.

GENERAL ELECTRIC COMPANY, et al., Fourth–Party Plaintiffs,

v.

UTICA CORPORATION, et al., Fourth–Party Defendants.

NIAGARA MOHAWK POWER CORPORATION, et al., Fourth–Party Plaintiffs,

v.

ANCHOR MOTOR FREIGHT, INC., et al., Fourth–Party Defendants.

Nos. 83–CV–1623, 91–CV–0039 and 92–CV–0562.

United States District Court, N.D. New York.

Oct. 11, 1994.

Phillips, Lytle Law Firm, Buffalo, NY (David K. Floyd, Kevin M. Hogan, of counsel), for The Movants—Bethlehem Steel, Citgo, Atlantic Richfield Co. and Allied Signal.

Lord Day & Lord Law Firm, New York City (William A. Ruskin, of counsel), for The Hertz Corp., Columbia County, Mobil Oil Corp., Ryder Truck Rental.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Presently before the Court are motions for summary judgment made pursuant to Fed. R.Civ.P. 56 brought by Bethlehem Steel, Citgo Petroleum Corporation, Atlantic Richfield Company and AlliedSignal Corporation (collectively referred to as "the Movants"). These motions are being made seeking dismissal of the Second Amended Third–Party Complaint and the cross-claims asserted against the Movants by various co-third party and fourth party defendants in their answer. Only four parties—The Hertz Corporation, Columbia County, Mobil Oil Corporation, and Ryder Truck Rental, Inc. (collectively referred to as "the Opponents")[1]—are opposing these motions. It is here noted that Bethlehem Steel's motion for summary judgment was not opposed by any of the parties involved, and therefore, it is granted for the reasons stated therein.

### I.

In 1984, the underlying action was commenced by the United States against Kenneth Peirce, Aluminum Company of America and Reynolds Metals Company pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (hereinafter "CERCLA"), 42 U.S.C. § 9601, et seq. The United States is seeking reimbursement of funds expended and funds to be expended by the Environmental Protection Agency (hereinafter "EPA") in its attempt to clean-up an alleged hazardous waste site known as the "York Oil Site" in Moira, New York. Although it has been ten years

since the commencement of this action, the Opponents were not joined in the action until the early part of 1994.

Presently, the Movants are seeking summary judgment contending that there are no material issues of fact as to the individual Movants' involvement with the York Oil Site. Simply, they contend that they were not involved in the dumping of hazardous waste into the Site in question. The Opponents, of course, disagree. They allege that there are indeed material issues of fact to be determined by the fact-finders. They further allege that even if the Court finds no material issues of fact in dispute, the motion should nevertheless be denied since the Opponents did not have adequate time for discovery to fully oppose the pending motions.

### II.

Rule 56(c) provides that the court may grant summary judgment where there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56(c). If there are no genuine issues, the movant is entitled to judgment as a matter of law. When the movant meets this standard, the opposing party must present sufficient facts to demonstrate that there exists some genuine issues of material fact in order to defeat the movant's motion for summary judgment. An issue is *genuine* if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears a stringent burden of establishing that there is no genuine issue of material fact remaining for trial, as any doubt as to the existence of a genuine issue for trial is to be resolved in favor of the non-moving party, here the Opponents. *See Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (the court must view the evidence in light most favorable to the party opposing the motion).

---

1. Initially, Buffalo Sewer Authority and Niagara Mohawk Power Company had joined in opposing the Movants' summary judgment motion. Since then, however, these two parties have withdrawn their opposition and have informed the Court that the pending motions will not be opposed by them.

Since there are three summary judgment motions now pending, they will be addressed in *seriatim*.

## A. CITGO PETROLEUM CORPORATION

■ The Second Amended Complaint alleges that Citgo Petroleum Corporation (hereinafter "Citgo") is liable under CERCLA because it "disposed of, or arranged for the disposal of, waste oils ... [it] owned or possessed and which were subsequently delivered ... to the [York Oil] Site." (Second Amded. Compl. ¶ 29). Thus, in examining Citgo's potential liability for the clean-up of the York Oil Site, the threshold question must be whether Citgo did in fact contribute to the release of hazardous substances into the Site in question.

Citgo was brought into this litigation based on the recollections of two drivers who were employed by Kenneth Peirce[2] during the period in question. In a deposition, one driver recalled that he picked up waste oil from storage tanks in a petroleum tank terminal on the Barge Canal off Route 370 between Liverpool and Baldwinsville. Nickerson Dep. at 187–89. Although he was not completely sure, he recalled that the tanks were Citgo tanks. Nickerson Dep. at 192. In addition to this testimony, a different Peirce driver testified that he picked up waste motor oil from two "Cities Service"[3] service stations in Canada for disposal at the York Oil Site.

Citgo is presently moving for summary judgment alleging that there is no material issue of fact as to its involvement in the York Oil Site; simply stated, Citgo denies any connection with the Site in question. In order to controvert the first driver's testimony, Citgo submits the affidavit of William J. Pfiffner which states that a record search of the tank terminal revealed that neither Citgo nor any of its affiliated companies ever had any tanks at the Barge Canal. Thus, it is argued that it is not possible for Citgo to have contributed hazardous waste to the York Oil Site. Pfiffner's affidavit further reveals that the "Citgo" logo was not used until May of 1965, and therefore, it was not possible for the driver to have seen the logo in 1963. As for the second driver's testimony that he had picked up waste oil from Cities Service service stations in Canada, Citgo submits evidence through depositions and affidavits that it had no service stations which it owned, operated or franchised in Canada in the 1960's nor in the 1970's. Thus, it is argued that it is not possible for the driver to have picked up waste oil from Citgo owned stations in Canada. As a final note, Citgo also questions the credibility of the Peirce drivers' testimony since they testified to events which occurred some thirty years ago.

The Court is faced with contradicting affidavits and supporting evidence. This presents a classic example of a case not ripe for summary judgment. The Opponents have submitted evidence which tend to indicate that Citgo did indeed contribute to the hazardous waste in the York Oil Site. Citgo, on the other hand, has submitted evidence which controverts the Opponents' evidence. And hence, there are material issues of fact in dispute, and for this reason, summary judgment must be denied.[4]

The fact that the events occurred some thirty years ago is of no consequence to our summary judgment analysis since such a factor goes to the credibility of a witness. It must be remembered that since the Court must, at this juncture of the proceedings, resolve any doubt as to the existence of a genuine issue for trial in favor of the non-moving party, here the Opponents, *see Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608, the Court must do the same when credibility issues arise. Accordingly, the Court will assume, for purposes of this motion only, that

---

2. Kenneth Peirce is the party who allegedly removed hazardous wastes from various facilities operated by the defendants and disposing them into the York Oil Site.

3. Citgo's predecessor in interest.

4. Citgo's supporting evidence is not conclusive evidence of Citgo's non-involvement because, from the record, the Court can not determine as a matter of law that Citgo did not operate any of the facilities in question. *See Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 472–73, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962).

the two Peirce drivers are indeed credible witnesses.

## B. ATLANTIC RICHFIELD COMPANY

■ The Second Amended Complaint alleges that Atlantic Richfield Company (hereinafter "ARCO") is liable under CERCLA because it "disposed of, or arranged for the disposal of, waste oils ... [it] owned or possessed and which were subsequently delivered ... to the [York Oil] Site." (Second Amded. Compl. ¶ 29). Thus, as with Citgo, the threshold question here must be whether ARCO did in fact contribute to the release of hazardous substances into the Site in question.

The third-party complaint names ARCO as a defendant based on the recollection of Peirce's drivers who recalled that, on a number of occasions, they had picked-up waste motor oil from service stations displaying either an ARCO or an Atlantic sign.[5] ARCO moves for summary judgment alleging that even though the service stations in question may have had the ARCO or the Atlantic sign, this fact is of no consequence since ARCO/Atlantic neither owned nor operated these stations. Instead, it is argued that these service stations were independently operated by dealers under lease or contract with ARCO. Thus, since ARCO had no control over the service stations, it is argued that ARCO can not be held liable for the actions of its dealers. ARCO cites to *General Electric Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281 (2d Cir.1992), for this proposition. The Opponents, on the other hand, seek denial of the summary judgment motion alleging that ARCO did indeed have control over the service stations in question. It is argued that since all inferences must be made in light most favorable to the Opponents, an inference must be made that the service stations were owned or operated by ARCO or its predecessors.

This instant summary judgment motion, not unlike the motion made by Citgo, must be denied. Clearly there is a material issue of fact as to the ownership of the stations in question. ARCO claims that they did not own or operate the stations but does not have the documentation to support its position as to *all* the stations. What ARCO does have is an affidavit of its employee asserting such a fact. This alone is not enough for the Court to decide as a matter of law that ARCO did not contribute hazardous waste to the York Oil Site, especially when there is evidence indicating that hazardous waste was indeed picked up from ARCO/Atlantic stations.

The *General Electric Co.* case has no relevance to the instant case because it is distinguishable. *Id.* at 283. In that case, there was uncontroverted evidence that the service stations were indeed operated by independent contractors. *Id.* at 285. In the present case, this Court can not so conclude as a matter of law. There is a factual dispute as to the ownership of the stations, and thus, the holding of *General Electric Co.* is inapplicable.

## C. ALLIEDSIGNAL, INC.

■ The Second Amended Complaint alleges that AlliedSignal, Inc. (hereinafter "AlliedSignal") is liable under CERCLA because it "disposed of, or arranged for the disposal of, waste oils ... [it] owned or possessed and which were subsequently delivered ... to the [York Oil] Site." (Second Amded. Compl. ¶ 29). Thus, as with the other two Movants, the threshold question here must be whether AlliedSignal did in fact contribute to the release of hazardous substances into the Site in question.

After examining the record, it is clear that there is a material issue of fact as to whether AlliedSignal contributed hazardous waste to the York Oil Site. As with the other two motions, the Court is, again, faced with conflicting affidavits and depositions. The evidence submitted by the Opponents demonstrates that a Peirce driver did indeed pick up hazardous waste from an underground storage tank owned by Solvay Process, a company later purchased by AlliedSignal,[6] to be transported to the York Oil Site. AlliedSignal's evidence, of course, indicates other-

---

**5.** Atlantic and Richfield merged to become ARCO.

**6.** For convenience, the Court will refer to both entities as AlliedSignal.

wise. It is AlliedSignal's position that the driver misidentified the owner of the property, and that AlliedSignal had no connection whatsoever to the York Oil Site. For this reason, AlliedSignal urges the Court to grant summary judgment in its favor.

At this juncture of the proceedings, the Court is not in a position to determine as a matter of law that the tank in question was or was not owned by AlliedSignal. This is a material issue of fact to be determined by the fact-finder, and thus, the motion for summary judgment is denied as to this ground.

AlliedSignal contends that even assuming, *arguendo,* that the Peirce driver did pick up "waste" from its underground tank, it is argued that CERCLA liability would still not attach since the substance picked up by the driver falls within the "petroleum exception" to CERCLA.

CERCLA defines the term "hazardous substance" by cross-referencing several other environmental statutes. The term includes

"(A) *any* substance" designated under the Clean Water Act, "(B) *any* element, compound, mixture, solution, or substance" under CERCLA § 9602, "(C) *any* hazardous waste" listed in § 3001 of the Solid Waste Disposal Act, "(D) *any* toxic pollutant" listed in § 307(A) of the Clean Water Act, "(E) *any* hazardous air pollutant listed under" § 112 of the Clean Air Act, and "(F) *any* imminently hazardous chemical substance or mixture" with respect to which the EPA has taken action.

*United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 720 (2d Cir.1993) (quoting 42 U.S.C. § 9601(14)) (emphasis in original). "The statue on its face applies to 'any' hazardous substance, and it does not impose quantitative requirements." *Alcan Aluminum Corp.,* 990 F.2d at 720. It must be noted, however, that the statute, in defining "hazardous substance," specifically excludes from its definition, "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph." 42 U.S.C. § 9601(14).

■ Because of the lack of legislative history in connection with the petroleum exception, courts in the past have wrestled with the scope of the exception. Today, the issue is not so unsettled. In reading the language of the CERCLA statute in conjunction with the EPA's interpretation of the section in question, courts have stated that the petroleum exception applies to both refined and unrefined petroleum, "even though certain of its indigenous components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA." *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.,* 881 F.2d 801, 810 (9th Cir.1989). A distinction, however, must be made between petroleum containing indigenous hazardous substances in its natural or refined state and petroleum to which hazardous substances have been added through use. *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 266–67 (3d Cir.1992). The former falls within the exception, but the latter does not. *Id.*

■ Thus, in the case at bar, the issue then becomes whether the oil in question had within it, hazardous substances which would be considered non-indigenous or which resulted from use of the fuel oil.

AlliedSignal contends that the unused number 2 fuel oil allegedly picked up by the Peirce drivers from one of its facilities falls within the petroleum exception. This reasoning follows the testimony of the drivers who testified that the fuel oil in question was "unused" and "clean." And, since the petroleum exception applies to the case at bar, AlliedSignal argues that summary judgment should be granted in its favor. The Opponents urge the Court to do otherwise and deny summary judgment. Their opposing papers rely on two alternative theories: It is alleged that the number 2 fuel oil removed from AlliedSignal's tank had non-indigenous hazardous substances and, thus, did not fall within the petroleum exception, or alternatively, it is alleged that the Opponents did not have sufficient time or opportunity to engage in discovery to fully oppose the pending motion for summary judgment.

It is the determination of this Court that AlliedSignal's summary judgment motion is denied based on the Opponents' latter theory. Rule 56(f) of the Federal Rules of Civil Procedure states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for the reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). In reading Opponents' affidavits, it is plain that the Opponents did not have adequate time for discovery. Although the underlying case has been in existence for over ten years, the Opponents were not brought into this litigation until early this year. In their affidavit, the Opponents state that they are seeking, by way of written discovery and deposition testimony, to resolve the question of whether the number 2 fuel oil in question was contaminated with heavy metals, which would in effect take the fuel oil out of the petroleum exception. Since this question must be explored further in order for the Opponents to fully oppose the instant motion, the Court hereby denies AlliedSignal's motion for summary judgment pursuant to Fed.R.Civ.P. 56(f).[7]

### III.

For the foregoing reasons, the summary judgment motions made pursuant to Fed. R.Civ.P. 56 by Citgo Petroleum Corporation, Atlantic Richfield Company and AlliedSignal Corporation are denied in their entirety as to The Hertz Corporation, Columbia County, Mobil Oil Corporation, and Ryder Truck Rental, Inc. only. The said motions are granted as to all other parties who asserted a claim against Citgo Petroleum Corporation, Atlantic Richfield Company and AlliedSignal Corporation.[8] Bethlehem Steel's summary judgment motion, however, is granted in its entirety as to all parties who have asserted a claim against Bethlehem Steel, including The Hertz Corporation, Columbia County, Mobil Oil Corporation, and Ryder Truck Rental, Inc.[9]

**IT IS SO ORDERED.**

---

7. AlliedSignal contends that because Buffalo Sewer and Niagara Mohawk joined in the opposition of the motion, all discovery done by these two parties are assumed to apply to the other recently joined parties. This argument fails for two reasons: (1) Buffalo Sewer and Niagara Mohawk are no longer part of the Opponents; and (2) the argument is wholly without merit and unsupported by case law.

8. All other parties have stated that they do not oppose the pending motions.

9. These parties have stated that Bethlehem Steel's motion is not opposed.